[Cite as *State v. Seal*, 2014-Ohio-4167.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
HIGHLAND COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | |
| | | Case No. 13CA1 |
| v. | : | |
| | | DECISION AND |
| ARTHUR SEAL, | : | JUDGMENT ENTRY |
| Defendant-Appellant. | : | RELEASED 09/16/2014 |

APPEARANCES:

Bryan Scott Hicks, Lebanon, Ohio, for Appellant.

Anneka P. Collins, Highland County Prosecuting Attorney, Hillsboro, Ohio, for Appellee.

Hoover, J.

{¶ 1} This case arises from law enforcement's discovery of a methamphetamine lab in a camper/trailer ("camper") located immediately next to a house on a property in Highland County, Ohio. Appellant, Arthur Seal, appeals from the judgment of the Highland County Common Pleas Court, sentencing him to 14 years in prison after a jury convicted him for the illegal manufacture of drugs in the vicinity of a juvenile, illegal assembly or possession of chemicals for the manufacture of drugs in the vicinity of a juvenile, and endangering children.

{¶ 2} In his first assignment of error, Seal contends that the appellee, the State of Ohio (the "State"), presented insufficient evidence to prove the endangering children charge, because he alleges that there were two housing units on the property and that the child was not present in the same housing unit as the methamphetamine lab. He further argues that the trial court erred in failing to instruct the jury that where more than one housing unit exists on a single parcel of real

property, R.C. 2919.22(B)(6) requires that the child be present in the same housing unit and within 100 feet of the criminal activity. Finally, Seal argues that his trial counsel was ineffective for failing to object to the allegedly improper jury instruction, and for failing to raise the proper elements of endangering children during his Crim.R. 29 motion. Because the evidence presented established that there was only one "housing unit" on the parcel, and that the methamphetamine production took place within 100 feet of the child, Seal's arguments in support of his first assignment of error are misplaced.

{¶ 3} Seal contends in his second assignment of error that his convictions for the illegal manufacture of drugs and illegal assembly or possession of chemicals for the manufacture of drugs were against the manifest weight of the evidence. Specifically, Seal argues that because the only witness placing him in the camper on the date in question had an incentive to lie, was an admitted methamphetamine user, and an admitted thief; his testimony should be discredited. However, witness credibility is best left to the jury to decide, and in this case, the jury apparently chose to believe the State's witness. Moreover, other evidence was presented indicating that the camper containing the methamphetamine lab and associated materials belonged to Seal. Thus, we cannot say that the jury lost its way or created a manifest miscarriage of justice.

{¶ 4} Seal was indicted by the Highland County Grand Jury on three counts: count one, illegal manufacture of drugs in the vicinity of a juvenile, a felony of the first degree, in violation of R.C. 2925.04(A); count two, illegal assembly or possession of chemicals for the manufacture of drugs in the vicinity of a juvenile, a felony of the second degree, in violation of R.C. 2925.041(A); and count three, endangering children, a felony of the third degree, in violation of R.C. 2919.22(B)(6). Seal pled not guilty to all counts.

{¶ 5} A one-day jury trial was held on December 3, 2012. At trial, five witnesses testified for the State. The State presented evidence that on June 4, 2012, the Highland County Sheriff's Office was dispatched to answer a 911 call[1] indicating possible assistance needed at 5094 US Route 50, in Highland County, Ohio. An investigation of the 911call led to the procurement of a search warrant for a house and a camper that were located at the address. Upon execution of the search warrant, authorities located an active methamphetamine lab in the camper.

{¶ 6} Deputy Craig Seaman of the Highland County Sheriff's Office was the first officer to respond to the 911 call. Deputy Seaman testified that he knocked on the front door of the house but "the main resident of the property", Robert Coburn, would not allow him to enter the home. Since he was not permitted to enter the house, Deputy Seaman convinced Coburn to have everyone exit the home so that he could verify that the occupants were safe. While waiting for everyone to exit, Deputy Seaman observed Seal, Lindsey Findley, and Marc Ervin at the side of the house by a camper and Jeep Cherokee. Deputy Seaman also detected a strong ether odor coming from the camper and noticed an extension cord running from the camper to the house. Deputy Seaman then observed Ervin run from the property. Deputy Seaman chased Ervin, eventually catching him at a neighboring property. A pat down search of Ervin revealed the presence of methamphetamine on his person. After placing Ervin in his patrol cruiser, Deputy Seaman returned to the property at 5094 US Route 50.

{¶ 7} Deputy Seaman further testified that based on his experience, he believed the odor coming from the camper was associated with the manufacture of methamphetamine. Deputy Seaman opened the door of the camper to check if anyone was hiding inside, but then immediately shut the door upon observing no one inside. Deputy Seaman estimated that the

---

[1] In a separate but related appeal of the denial of requested post-conviction relief, Seal contends that a 911 call was never made indicating an emergency at the property; but instead he argues that law enforcement and the State concocted the 911 call to gain access to the property and to secure a search warrant for the property.

camper was located less than 10 feet from the house. Deputy Seaman also observed several people exit the home, including G.S., a minor child. Finally, Deputy Seaman testified that he responded to the same camper at a different address on September 22, 2012; and Seal was present at the camper.

{¶ 8} Detective Daniel Croy and Detective Randy Sanders of the Highland County Sheriff's Office assisted in the execution of the search warrant of the house and camper. Detective Croy testified that he is trained and certified in the identification and dismantling of methamphetamine labs. He further testified that he located several items necessary for the manufacture of methamphetamine in the camper, including: pseudoephedrine pills, acid, and lithium batteries. Detective Croy also found an active one-pot methamphetamine lab in the camper, and noted a strong ether odor in the camper, which is associated with methamphetamine production. A mason jar with a funnel containing liquid was also located on a shelf in the camper, which according to Detective Croy is used in the manufacture of methamphetamine. Detective Croy also found important paperwork addressed to Seal in the camper. The paperwork was admitted as separate exhibits at trial. Detective Croy also took several samples from the one-pot methamphetamine lab and other bottles. He then neutralized and dismantled the lab. Detective Croy also testified that the camper was located less than 5 feet from the house, and in his opinion, the camper was being used for manufacturing methamphetamine. Finally, Detective Croy authenticated several photographs depicting the camper and its contents. These photographs were admitted as trial exhibits.

{¶ 9} Detective Sanders testified that he had responded to the same camper at different addresses on July 25, 2012 and August 22, 2012. On both dates, Seal was present at the camper.

{¶ 10} Ervin testified that he resided at the house on the property, and that Seal and Findley had been staying in the camper on the property. He further testified that he was present in the camper on June 4, 2012, and saw Seal adding lithium strips to a bottle in the camper, and shaking the bottle. According to Ervin, Seal was making methamphetamine; and Seal told him that he was making methamphetamine. Ervin claims that he attempted to leave the scene because he believed he had a warrant for unpaid fines, but denied cooking methamphetamine. Ervin admitted that he has a prior theft conviction, and that he is an occasional methamphetamine user. Finally, Ervin testified that he was offered a first-degree misdemeanor plea[2] in exchange for his testimony.

{¶ 11} Rebecca Atkins testified that she is G.S.'s mother, and that Seal is G.S.'s father. G.S. was 8 years old at the time of the incident. Atkins further indicated that she dropped G.S. off at the "white house" on the property on June 1, 2012, for a two-week visit with Seal pursuant to court ordered visitation.

{¶ 12} Finally, the parties stipulated to the accuracy of a Bureau of Criminal Identification and Investigation ("BCI&I") report that indicated that methamphetamine was present in the jar located in the camper.

{¶ 13} At the close of the State's case, defense counsel moved for a Crim.R. 29 judgment of acquittal of all charges. The trial court denied the motion. Seal did not present a case in defense.

{¶ 14} Thereafter, the trial judge instructed the jury on the law, the parties gave closing arguments, and the case was submitted to the jury. The jury returned a guilty verdict on each count of the indictment, and further found that counts one and two were committed in the

---

[2] According to Ervin, he was originally charged with felony possession of drugs as a result of the incident on June 4, 2012.

vicinity of a juvenile. The trial court accepted the verdict, deferred sentencing to a later date, and offered the parties the opportunity to submit briefs on whether the counts were allied offenses of similar import subject to merger under R.C. 2941.25.

{¶ 15} Seal was sentenced on December 10, 2012. The State submitted a brief on the merger issue; and Seal, through counsel, orally argued at the sentencing hearing that the counts should merge for sentencing purposes. Ultimately, the trial court determined that none of the counts were allied offenses of similar import subject to merger. The court sentenced Seal to 8 years in prison on count one, of which 4 years is mandatory[3]; 4 years in prison on count two, of which 3 years is mandatory[4]; and a mandatory 2 years in prison for count three[5]. The trial court further ordered that the sentences be served consecutively, for a total of 14 years in prison; notified Seal that he is subject to 5 years of post-release control; and ordered Seal's driver's license suspended for a period of 5 years. Seal filed a timely notice of appeal.

{¶ 16} On appeal, Seal asserts the following assignments of error for our review:

First Assignment of Error:

> THE DEFENDANT WAS IMPROPERLY CONVICTED OF CHILD
> ENDANGERING AS THE STATE FAILED TO PROVE THE APPLICABLE
> ELEMENTS OF CHILD ENDANGERING, THE TRIAL COURT
> COMMITTED PLAIN ERROR IN GIVING INSTRUCTIONS ON THE
> WRONG ELEMENTS AND TRIAL COUNSEL WAS INEFFECTIVE.

Second Assignment of Error:

> THE CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT OF THE
> EVIDENCE.

{¶ 17} In his first assignment of error, Seal contends that he was improperly convicted of the endangering children charge under R.C. 2919.22(B)(6). Seal offers three distinct arguments

---

[3] *See* R.C. 2925.04(C)(3)(b).
[4] *See* R.C. 2925.041(C)(2).
[5] *See* R.C. 2919.22(E)(3)(a).

in support of his assignment of error, all of which depend on the threshold issue of whether the camper constitutes a "housing unit" as contemplated by the statute.

{¶ 18} R.C. 2919.22(B)(6) provides:

(B) No person shall do any of the following to a child under eighteen years of age or a mentally or physically handicapped child under twenty-one years of age: * * *

(6) Allow the child to be on the same parcel of real property and within one hundred feet of, or, in the case of more than one housing unit on the same parcel of real property, in the same housing unit and within one hundred feet of, any act in violation of section 2925.04 or 2925.041 of the Revised Code when the person knows that the act is occurring, whether or not any person is prosecuted for or convicted of the violation of section 2925.04 or 2925.041 of the Revised Code that is the basis of the violation of this division.

The State presented evidence that Seal's minor daughter, G.S., was located in the house on the same parcel of real estate as the methamphetamine lab and within 100 feet of the lab. The trial judge also instructed the jury that in order to convict Seal of the endangering children charge, the jury would need to find beyond a reasonable doubt that Seal "did allow a child under the age of 18 years of age to be on the same parcel of real property, and within 100 feet of any act in violation of Section 2925.04, which refers to the violation alleged in count one, or 2925.041 which refers to the violation alleged in count two, when [he knew] that the act [was] occurring whether or not [he] is prosecuted for or convicted of the violation of either section of the Revised Code that is the basis of the violation of this division." [Transcript at 201.] Seal asserts that the State's evidence was insufficient to convict him of the charge, and that the trial court's

instruction was improper, because in his view, the house and camper are separate "housing units." Thus, Seal contends that the State was required to prove that G.S. was located within 100 feet of the methamphetamine lab and in the same housing unit as the lab, a circumstance Seal argues is impossible given the testimony that the lab was located in the camper and G.S. in the nearby house. Seal also asserts that his trial counsel was ineffective for failing to make this argument in support of his Crim.R. 29 motion, and for failing to object to the trial court's jury instruction.

{¶ 19} All three of Seal's arguments depend on whether the camper is a "housing unit." The term "housing unit" is not defined in the statute, however; and thus we must interpret the statute. "The interpretation of a statute is a question of law that we review de novo." *State v. Bundy*, 2012-Ohio-3934, 974 N.E.2d 139, ¶ 46 (4th Dist.).

> "The primary goal of statutory construction is to ascertain and give effect to the legislature's intent in enacting the statute. The court must first look to the plain language of the statute itself to determine the legislative intent. We apply a statute as it is written when its meaning is unambiguous and definite. An unambiguous statute must be applied in a manner consistent with the plain meaning of the statutory language."

*Id*., quoting *State v. Lowe*, 112 Ohio St.3d 507, 2007-Ohio-606, 861 N.E.2d 512, ¶ 9.

{¶ 20} While R.C. 2901.04(A) requires courts to liberally construe criminal statutes in favor of the accused, " 'courts do not have the authority to ignore the plain and unambiguous language of a statute under the guise of either statutory interpretation or liberal construction; [instead], the court must give effect to the words utilized.' " *State v. Snowder,* 87 Ohio St.3d 335, 336-337, 720 N.E.2d 909 (1999), quoting *Morgan v. Ohio Adult Parole Auth.,* 68 Ohio St.3d

344, 347, 626 N.E.2d 939 (1994). "Thus, if the meaning of a statute is unambiguous and definite, a court must apply it as written and no further interpretation is necessary." *Bundy* at ¶ 47.

{¶ 21} Here, the plain and unambiguous language of R.C. 2919.22(B)(6) supports the conclusion that the camper involved in this case is not a separate housing unit as envisioned by the General Assembly. Because the term "housing unit" is not defined in the statute or elsewhere in the Ohio Revised Code, we give it its common everyday meaning. The United States Census Bureau defines the term as follows:

> A housing unit is a house, an apartment, a mobile home or trailer, a group of
>
> rooms, or a single room that is occupied, or, if vacant, is intended for occupancy
>
> as separate living quarters. Separate living quarters are those in which the
>
> occupants live separately from any other persons in the building and which have
>
> direct access from the outside of the building or through a common hall.
>
> * * *
>
> Both occupied and vacant housing units are included in the housing unit
>
> inventory, except that recreational vehicles, boats, vans, tents, railroad cars, and
>
> the like are included only if they are occupied as someone's usual place of
>
> residence. * * *

https://www.census.gov/popest/about/terms/housing.html.

{¶ 22} The evidence presented in this case does not demonstrate that the camper was intended as separate living quarters for Seal or anyone else. For one, the camper apparently did not have its own power source, as indicated by the extension cord that ran from the camper to the house. There was no testimony indicating that the camper was connected to a water source, had

sufficient plumbing, or that the camper had been assigned a separate address from the house. The photographs of the camper and its contents that were admitted as evidence show no indication that the camper was used as someone's usual place of residence. To the contrary, the camper appears to be nothing more than a place to manufacture illicit drugs and to store someone's personal belongings. This conclusion is consistent with Detective Croy's testimony that the camper was being used for manufacturing methamphetamine. We also note that Rebecca Atkin's specifically testified that she dropped G.S. off at the "white house" for court ordered visitation with Seal.

{¶ 23} This is not to say that a camper or trailer can never be a housing unit. However, in analyzing the evidence in this case in accordance with the common meaning of "housing unit", we conclude that the camper here is not a separate housing unit. Thus, the State was not required to prove the additional element that G.S. was located in the camper. Likewise, the trial court's jury instruction was not improper; and trial counsel's failure to argue the additional element did not amount to the ineffective assistance of counsel. Accordingly, we overrule Seal's first assignment of error.

{¶ 24} In his second assignment of error, Seal contends that his convictions for the illegal manufacture of drugs and the illegal assembly or possession of chemicals for the manufacture of drugs were against the manifest weight of the evidence. Seal contends that the State did not prove that he was ever in the camper on the day the methamphetamine lab was discovered, i.e., that the testimony of Ervin, an admitted methamphetamine user with an incentive to exonerate himself, was not competent and credible evidence to establish that the methamphetamine lab and associated materials belonged to him.

{¶ 25} "When an appellate court considers a claim that a conviction is against the manifest weight of the evidence, the court must dutifully examine the entire record, weigh the evidence, and consider the credibility of witnesses." *State v. Topping*, 4th Dist. Lawrence No. 11CA6, 2012-Ohio-5617, ¶ 60. "The reviewing court must bear in mind, however, that credibility generally is an issue for the trier of fact to resolve." *Id.*, citing *State v. Issa,* 93 Ohio St.3d 49, 67, 752 N.E.2d 904 (2001); *State v. DeHass,* 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212 (1967), paragraph one of the syllabus.

{¶ 26} "Once the reviewing court finishes its examination, the court may reverse the judgment of conviction only if it appears that the fact-finder, when resolving the conflicts in evidence, clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." (Quotations omitted.) *State v. Davis*, 4th Dist. Ross No. 12CA3336, 2013-Ohio-1504, ¶ 14. "A reviewing court should find a conviction against the manifest weight of the evidence only in the exceptional case in which the evidence weighs heavily against the conviction." (Quotations omitted.) *Id.* at ¶ 15.

{¶ 27} We do not believe that the evidence adduced at trial weighs heavily against the convictions or that the jury clearly lost its way. Instead, the record demonstrates that the State presented evidence on each element of the charges. Therefore, the jury's decision to convict did not amount to a manifest miscarriage of justice.

{¶ 28} R.C. 2925.04(A) provides that "[n]o person shall * * * knowingly manufacture or otherwise engage in any part of the production of a controlled substance." R.C. 2925.041(A) provides that "[n]o person shall knowingly assemble or possess one or more chemicals that may be used to manufacture a controlled substance in schedule I or II with the intent to manufacture a controlled substance in schedule I or II in violation of section 2925.04 of the Revised Code."

{¶ 29} Detective Croy, who testified that he has a great deal of training and experience in the identification and dismantling of methamphetamine labs, identified several components used to manufacture methamphetamine in the camper. Specifically, he stated that he found lithium batteries, pseudoephedrine pills, and acid inside the camper. Some of these materials were even admitted as physical exhibits at trial, and they were documented in photographs admitted at trial. Detective Croy further testified that he located an active one-pot method methamphetamine lab in the camper. Again, a photograph of the methamphetamine lab was admitted as evidence. Detective Croy also testified that he located important paperwork addressed to Seal inside the camper.

{¶ 30} Deputy Seaman and Detective Sanders testified that they were familiar with this specific camper and that they both encountered the camper on dates after the alleged incident. In all incidents, Seal was present at the camper.

{¶ 31} Ervin testified that he was present in the camper just prior to the arrival of Deputy Seaman and that he witnessed Seal adding lithium strips to a bottle in the camper, and shaking the bottle. He also claimed that Seal told him he was cooking methamphetamine. According to Ervin, Seal and Findley had been staying at the camper on the property.

{¶ 32} Ervin admitted to being a methamphetamine user and to having a prior theft conviction. Ervin also admitted that he was receiving a plea deal in his own criminal case arising from these events in exchange for his testimony. Ervin, however, denied cooking methamphetamine in the camper, and testified that he was not under the influence of methamphetamine while giving his testimony.

{¶ 33} Based on this evidence, we cannot say that the verdict here was against the manifest weight of the evidence. The State presented credible evidence that Seal, at the least, had

a possessory interest over the camper and its contents and that he was inside of the camper on the day in question. Thus, the evidence, if believed, could convince reasonable jurors that he was in constructive possession if not actual possession over the illegal chemicals and methamphetamine lab.

{¶ 34} We recognize that Ervin's testimony is particularly important because it places Seal in the camper just prior to the search of the property and explicitly states that Seal was manufacturing methamphetamine. We also recognize that Ervin is an admitted methamphetamine user, convicted thief, and had an incentive to testify in the case. However, Ervin's credibility was a matter for the jury to decide. *See State v. Fisher*, 4th Dist. Jackson No. 11CA10, 2012-Ohio-6260, ¶ 9 ("[T]he weight of the evidence and witness credibility are issues that the trier of fact must determine. * * * The rationale for this view is that the trier of fact * * * is in the best position to view the witnesses and to observe their demeanor, gestures and voice inflections and to use those observations to weigh credibility. * * * Consequently, a jury may choose to believe all, part or none of the witness testimony."). Moreover, other than Ervin's testimony regarding the distance between the camper and the house, we discern no obvious inconsistencies between his testimony and the testimony of the other witnesses, which would indicate that his testimony is trustworthy.

{¶ 35} The jury here apparently found Ervin's testimony, or at least portions of it, to be credible. Even if the jury did not find Ervin credible, the verdict is still consistent with the State's other evidence establishing Seal's constructive possession or actual possession of the camper and its contents. Put another way, even without Ervin's testimony, more than enough evidence exists to support the verdict. Accordingly, we overrule Seal's second assignment of error.

{¶ 36} Seal has failed to establish that the camper is a separate "housing unit" under the plain meaning of R.C. 2919.22(B)(6). Thus, the State was not required to prove, and the trial court was not required to instruct the jury, that G.S. needed to be in the camper while drugs were being manufactured in order to convict under the endangering children charge. We also find that in evaluating the evidence, the jury did not lose its way and create a manifest miscarriage of justice when it reached a guilty verdict on the illegal manufacture of drugs and illegal assembly or possession of chemicals for the manufacture of drugs counts. Any potential credibility determinations were best left for the jury to decide, and other substantial credible evidence supported the verdict. Accordingly, the trial court's judgment is affirmed.

JUDGMENT AFFIRMED.

**JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS AFFIRMED. Appellant shall pay the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Highland County Common Pleas Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of the proceedings in that court. If a stay is continued by this entry, it will terminate at the earliest of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to the expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Harsha, J. and McFarland, J.: Concur in Judgment and Opinion

For the Court

By:_____
        Marie Hoover, Judge

**NOTICE TO COUNSEL**

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.