[Cite as *State v. Reyes-Rosales*, 2016-Ohio-3338.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ADAMS COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | Case No. 15CA1010 |
| Plaintiff-Appellee, | : | |
| v. | : | DECISION AND JUDGMENT ENTRY |
| MEGAN REYES-ROSALES, | : | RELEASED: 6/3/2016 |
| Defendant-Appellant. | : | |

APPEARANCES:

Tyler E. Cantrell and John B. Caldwell, Office of Young & Caldwell, L.L.C., West Union, Ohio, for appellant.

David Kelley, Adams County Prosecuting Attorney, and Kris D. Blanton, Adams County Assistant Prosecuting Attorney, West Union, Ohio, for appellee.

Harsha, J.

{¶1} Reyes-Rosales, who was convicted of sexual battery, argues that the trial court erred by denying her motions for judgment of acquittal and that her conviction was against the manifest weight of the evidence. She claims that the state did not establish that the victim, seventeen-year old Z.H., was "in custody of law" or that she had "supervisory or disciplinary authority" over Z.H. when they engaged in sexual conduct.

{¶2} The state introduced testimony that: (1) the child victim, seventeen-year-old Z.H., had been placed in the Wilson Children's Home ("Children's Home") by a court order after having been adjudicated delinquent; (2) Reyes-Rosales, a nurse at the home, engaged in sexual conduct with Z.H. when she had custody of him and was responsible for his care and well-being; and (3) Reyes-Rosales had supervisory authority over the children who resided in the home, including Z.H. Because the jury was free to credit this evidence, it did not clearly lose its way or create a manifest

miscarriage of justice by finding that the state had proven the essential elements of sexual battery beyond a reasonable doubt.  We reject Reyes-Rosales's argument contesting the sufficiency and the manifest weight of the evidence.

{¶3}    Next, Reyes-Rosales contends that the trial court abused its discretion by denying her requested jury instructions.  She requested the court to instruct that:  (1) "in custody of law" requires the victim to be a prisoner or inmate; (2) to find her guilty of R.C. 2907.03(A)(6), it must find that she used power conferred by the state to coerce or force sexual activity by the misuse of that authority; and (3) consensual sexual conduct between persons sixteen years or older is legal in Ohio.  Because the requested instructions are either incorrect statements of the law, unnecessarily repetitive, or not applicable to the facts in the case, the trial court did not err by denying them.

{¶4}    Finally, Reyes-Rosales asserts that the trial court erred by taking judicial notice of the juvenile's confinement to the Children's Home.  We find this assertion to be meritless because the record does not establish the premise of the question—that the court took judicial notice of Z.H.'s confinement at the home.  Instead, the state introduced testimonial evidence that Z.H. was committed to the home by court order after being adjudicated to be a delinquent child. Thus, it was the jury that determined whether Reyes-Rosales engaged in sexual conduct with Z.H. while he was "in custody of law," not the court.

{¶5}    Therefore, we overrule Reyes-Rosales's assignments of error and affirm her conviction and sentence.

I. FACTS

{¶6} The Adams County Grand Jury returned an indictment charging Reyes-Rosales with two counts of sexual battery, one in violation of R.C. 2907.03(A)(5) and one in violation of R.C. 2907.03(A)(6), both felonies of the third degree. Reyes-Rosales entered a not-guilty plea to the charges, and the matter proceeded to a jury trial, which provided the following evidence.

{¶7} Jill Wright, the Executive Director of Adams County Children's Services, testified that the Juvenile Court placed seventeen-year-old child, Z.H., in the Children's Home in March 2014 after adjudicating him to be a delinquent child. Melissa Taylor, the Superintendent of the Children's Home, similarly testified that Z.H. was admitted from juvenile court in a delinquency case. The Children's Home is a safe haven for children who are abused, neglected, or dependent and it also serves to house unruly and delinquent children in a restricted, residential setting. Executive Director Wright further testified that all persons who worked at the Children's Home were service providers for the residents.

{¶8} Superintendent Taylor testified that she and everybody working at the home were part of a team and had supervisory authority over all the children residing there. Reyes-Rosales, an employee of Travco Behavioral Health Center, Inc., worked as a nurse at the Children's Home. According to Taylor, Reyes-Rosales had supervisory authority over the children, and that when Reyes-Rosales was with Z.H., she had custody over him and was responsible for his care and well-being.

{¶9} Reyes-Rosales's primary duty at the Children's Home was to coordinate mental-health therapy sessions between the therapist and patients, but she had no control over the type of therapy, medication, or treatment that anyone received while

there.  She also provided preadmission services, including checking blood pressure and weight and making sure the Children's Home had the children's prescribed medication. However, she did not have the authority to discipline anyone, including Z.H.

{¶10}  In June 2014, Reyes-Rosales and Z.H. were in an office at the Children's Home when he told her that he wanted to have sex with her and pulled down his pants. Reyes-Rosales then performed oral sex on him.  Z.H. testified that he initiated the physical relationship and that Reyes-Rosales could not discipline him or tell him what to do.  Reyes-Rosales initially denied engaging in sexual conduct with Z.H., but later admitted it.

{¶11}  After the court denied her Crim.R. 29 motions for judgment of acquittal, Reyes-Rosales asked the court to instruct the jury that:  (1) "in custody of law" requires the victim to be a prisoner or inmate; (2) to find her guilty of R.C. 2907.06(A)(6), it must find that she used power conferred by the state to coerce or force sexual activity by the misuse of that authority; and (3) consensual sexual conduct between persons sixteen years or older is legal in Ohio.  The trial court denied the request.

{¶12}  The jury returned a verdict finding Reyes-Rosales guilty of sexual battery in violation of R.C. 2907.03(A)(6) and not guilty of sexual battery in violation of R.C. 2907.03(A)(5).  The trial court sentenced her to two years of community control, including a 90-day jail term, ordered counseling and DNA testing, fined her, and classified her as a sex offender.  This appeal ensued.

## II. ASSIGNMENTS OF ERROR

{¶13}  Reyes-Rosales assigns the following errors for our review:

I. THE COURT COMMITTED REVERSIBLE ERROR IN DENYING THE DEFENDANT'S MOTIONS FOR ACQUITTAL UNDER RULE 29.

II. THE COURT COMMITTED REVERSIBLE ERROR IN DENYING THE DEFENDANT'S MOTION FOR SPECIFIC JURY INSTRUCTIONS AS FILED ON JUNE 30, 2015.

III. MRS. REYES-ROSALES['] CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND SHOULD BE OVERTURNED.

IV. THE COURT ERRED TO THE PREJUDICE AND DETRIMENT OF THE DEFENDANT BY TAKING JUDICIAL NOTICE OF THE JUVENILE'S CONFINEMENT TO THE ADAMS COUNTY CHILDREN'S HOME.

### III. LAW AND ANALYSIS

#### A.  Sufficiency and Manifest Weight of the Evidence

##### 1.  Standard of Review

**{¶14}**  In her first assignment of error Reyes-Rosales asserts that the trial court erred by denying her Crim.R. 29 motions for judgment of acquittal.  Under Crim.R. 29(A), "[t]he court on motion of a defendant * * *, after the evidence on either side is closed, shall order the entry of acquittal * * *, if the evidence is insufficient to sustain a conviction of such offense or offenses."  "A motion for acquittal under Crim.R. 29(A) is governed by the same standard as the one for determining whether a verdict is supported by sufficient evidence."  *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, 847 N.E.2d 386, ¶ 37; *State v. Husted*, 2014-Ohio-4978, 23 N.E.3d 253, ¶ 10 (4th Dist.).

**{¶15}**  "When a court reviews a record for sufficiency, '[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' "  *State v. Maxwell*, 139 Ohio St.3d 12, 2014-Ohio-1019, 9 N.E.3d 930, ¶ 146, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991),

paragraph two of the syllabus; *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). In making its ruling a court does not weigh the evidence but simply determines whether the evidence, if believed, is adequate to support a conviction. In other words, the motion does not test the rational persuasiveness of the state's case, but merely its legal adequacy. *State v. Koon*, 4th Dist. Hocking No. 15CA17, 2016-Ohio-416, ¶ 17.

{¶16} In her third assignment of error Reyes-Rosales argues that her conviction was against the manifest weight of the evidence. In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997); *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6254, 960 N.E.2d 955, ¶ 119. "Although a court of appeals may determine that a judgment of a trial court is sustained by sufficient evidence, that court may nevertheless conclude that the judgment is against the weight of the evidence." *Thompkins* at 387.

{¶17} However, we are reminded that generally, the weight and credibility of evidence are to be determined by the trier of fact. *State v. Kirkland*, 140 Ohio St.3d 73, 2014-Ohio-1966, 15 N.E.3d 818, at ¶ 132. "A jury, sitting as the trier of fact, is free to believe all, part or none of the testimony of any witness who appears before it." *State v. West*, 4th Dist. Scioto No. 12CA3507, 2014-Ohio-1941, ¶ 23. We defer to the trier of fact on these evidentiary weight and credibility issues because it is in the best position

to gauge the witnesses' demeanor, gestures, and voice inflections, and to use these observations to weigh their credibility. *Id*; *State v. Koon*, 4th Dist. Hocking No. 15CA17, 2016-Ohio-416, at ¶ 18.

{¶18} These assignments of error also require our interpretation of R.C. 2907.03(A)(6). Statutory interpretation is a question of law that we review de novo. *See Southworth v. Marion Twp. Bd. of Trustees*, 4th Dist. Pike No. 15CA854, 2016-Ohio-1005, ¶ 21; *State v. Seal*, 2014-Ohio-4167, 20 N.E.3d 292, ¶ 19 (4th Dist.).

2.  Law and Analysis

{¶19} Reyes-Rosales argues that the state failed to establish she had committed sexual battery as proscribed by R.C. 2907.03(A)(6), which provides that "[n]o person shall engage in sexual conduct with another, not the spouse of the offender, when * * * [t]he other person is in custody of law or a patient in a hospital or other institution, and the offender has supervisory or disciplinary authority over the other person." She concedes that she engaged in sexual conduct with Z.H., a minor resident of the Children's Home, and that he was not her spouse. But she contends that the state never established that Z.H. was "in custody of law" or that she had "supervisory or disciplinary authority over" him.

{¶20} "Our primary concern when construing statutes is legislative intent." *State v. Marcum*, __ Ohio St.3d __, 2016-Ohio-1002, __ N.E.3d __, ¶ 8. "In determining that intent, we first look to the plain language of the statute[, and] [w]hen the language is unambiguous and definite, we apply it as written." *Id.* If the language is clear, " 'there is no occasion to resort to other means of interpretation.' " *Griffith v. Aultman Hosp.*, __ Ohio St.3d __, 2016-Ohio-1138, __ N.E.3d __, ¶ 18, quoting *Singluff v. Weaver*, 66

Ohio St.2d 621, 64 N.E. 574 (1902), paragraph two of the syllabus; *see also State v. Erskine*, 2015-Ohio-710, 29 N.E.3d 272, ¶ 26 (4th Dist.).

**{¶21}** If the words and phrases used have not acquired a technical or particular meaning, whether by legislative definition or otherwise, we read them in context and construe them according to common usage. *State v. Manocchio*, 138 Ohio St.3d 292, 2014-Ohio-785, 6 N.E.3d 47, ¶ 17, citing R.C. 1.42.

**{¶22}** Neither the "in custody of law" nor the "supervisory or disciplinary authority" phrase in R.C. 2907.03(A)(6) has accorded statutory definition or a technical or particular meaning. Therefore, these phrases must be read in context and construed according to common usage. *Manocchio* at ¶ 17, citing R.C. 1.42; *see also State v. Arega*, 2012-Ohio-5774, 983 N.E.2d 863, ¶ 16 (10th Dist.) ("Because 'supervisory or disciplinary authority' is not statutorily defined, the words must be construed according to the rules of grammar and common usage").

**{¶23}** "Custody" means "[t]he care and control of a thing or person for inspection, preservation, or security" and "law" means "[t]he judicial and administrative process; legal action and proceedings." *Black's Law Dictionary* 412 and 900 (8th Ed.2004). Reyes-Rosales argues that R.C. 2907.03(A)(6) in general and this phrase in particular is limited to prisoners and patients in a hospital or other institution. She bases this interpretation on language expressed in the 1973 Legislative Service Commission Comment, which states that this subsection "proscribes sexual conduct with a prisoner, or with a patient in a hospital or institution, by an offender who has supervisory or disciplinary authority over the victim." But this phrase is "obviously elastic and does not necessarily require actual imprisonment or physical detention," although it arguably

"does require some showing that the victim's liberty was restrained by some power conferred by the state." *State v. Walker*, 140 Ohio App.3d 445, 455, 748 N.E.2d 79 (1st Dist.2000). That is, the plain meaning of "in custody of law or a patient in a hospital or other institution" is not restricted to prisoners and patients; it includes "prisoners, patients, *and residents*" and "does not require proof of coercion, impairment, or other condition." (Emphasis added.) *See generally* Katz, Martin, Lipton, Giannelli, and Crocker, *Baldwin's Oh. Prac. Crim L.*, Section 99:10 (3d Ed.2014); *State v. Roy*, 2014-Ohio-5186, 22 N.E.3d 1112, ¶ 43 (9th Dist.) (several districts have interpreted R.C. 2907.03(A)(6) to be "applicable to custodial-type settings").

**{¶24}** The state established through the uncontroverted testimony of Adams County Children's Services Executive Director Jill Wright and Children's Home Superintendent Melissa Taylor that when Reyes-Rosales engaged in sexual conduct with Z.H., the child was a resident of the Children's Home because he had been adjudicated delinquent and placed there by court order. Z.H.'s liberty was restrained by the court order placing him at the Children's Home. Therefore, the jury had sufficient evidence before it to determine that Z.H. was "in custody of law" when Reyes-Rosales engaged in sexual conduct with him. Likewise, the jury did not clearly lose its way or create a manifest miscarriage of justice by reaching that conclusion.

**{¶25}** "In the absence of evidence that Reyes-Rosales had any disciplinary authority over Z.H., the next inquiry is whether the state proved that Reyes-Rosales had "supervisory authority" over Z.H. "Supervisory" means "of, pertaining to, or having supervision"; "supervision" means "the act or function of supervising"; and "supervise" is synonymous with the words "manage, direct, control, [and] guide." *Webster's New*

*Universal Unabridged Dictionary* 1911 (2003). "Authority" denotes "a power or right to direct the actions or thoughts of others." *Id.* at 139.

**{¶26}** Reyes-Rosales argues that "[n]o evidence was presented in this matter to establish that [she] had supervisory * * * authority over Z.H." But she ignores or seeks to minimize the testimony of Adams County Children's Services Executive Director Wright, who testified that all persons who worked at the Children's Home were service providers for the residents, and Children's Home Superintendent Taylor, who testified that she and everybody working at the home were part of a team and had supervisory authority over all the children residing there. And according to Taylor, Reyes-Rosales had supervisory authority over the children, and when Reyes-Rosales was with Z.H., she had custody over him and was responsible for his care and well-being. This testimony, when credited, supports a conclusion that Reyes-Rosales had the power or right to direct the actions of Z.H.

**{¶27}** Reyes-Rosales relies on *Arega*, 2012-Ohio-5774, 983 N.E.2d 863, in which there was no evidence that a nursing assistant exercised supervisory or disciplinary authority over a patient at a skilled nursing facility. The court in that case cited *Wilson v. State*, 605 S.E.2d 921 (Ga.App.2004), where there was no evidence that a nursing assistant at a nursing home had any supervisory authority over the patients in the nursing home in a trial for sexual assault under Georgia law. *Arega* at ¶ 20-22. Both of these cases are distinguishable because there is evidence here from Executive Director Wright and Superintendent Taylor establishing that Reyes-Rosales had supervisory authority over Z.H.

{¶28} Although we may have come to a different conclusion if we were the trier of fact, we must defer to the jury's credibility and weight determinations. Because the jury neither clearly lost its way nor created a manifest miscarriage of justice by crediting the state's evidence and determining that Reyes-Rosales had supervisory authority over Z.H., the jury verdict was not against the manifest weight of the evidence. *See, e.g., State v. Moses*, 10th Dist. Franklin No. 13AP-816, 2014-Ohio-1748, ¶ 34 ("where the basis for a manifest weight argument lies in witnesses' conflicting testimony or the credibility of the witnesses, the court will decline to substitute its own judgment for that of the trier of fact").

{¶29} Because the evidence was sufficient to establish that Reyes-Rosales committed the offense of sexual battery in violation of R.C. 2907.03(A)(6) and the jury verdict convicting her of that offense was supported by substantial credible evidence, we overrule her first and third assignments of error.

### B. Jury Instructions

### 1. Standard of Review

{¶30} In her second assignment of error Reyes-Rosales contends that the trial court erred in denying her motion for specific jury instructions related to the R.C. 2907.03(A)(6) sexual-battery charge. In general "[a]n appellate court reviews a trial court's refusal to give a requested jury instruction for abuse of discretion." *State v. Adams*, 144 Ohio St.3d 429, 2015-Ohio-2954, 45 N.E.3d 127, ¶ 240, citing *State v. Wolons*, 44 Ohio St.3d 64, 68, 541 N.E.2d 443 (1989). "A trial court abuses its discretion when it is unreasonable, arbitrary, or unconscionable." *See State v. Graham*, 4th Dist. Highland No. 13CA11, 2014-Ohio-3149, ¶ 24. But "de novo review applies to

whether jury instructions correctly state the law." *See* Wolff, Brogan, and McSherry,

*Anderson's Appellate Practice and Procedure in Ohio*, Section 6.02[8][b], fn.47 (2015

Ed.), citing *State v. Morris*, 132 Ohio St.3d 337, 2012-Ohio-2407, 972 N.E.2d 528, ¶ 21.

We thus review de novo whether the requested jury instructions correctly state the law.

2.  Law and Analysis

**{¶31}** Reyes-Rosales asked the trial court to give the following jury instructions

on the R.C. 2907.03(A)(6) sexual-battery charge:  (1) "in custody of law" requires the

victim to be a prisoner or inmate; (2) to find her guilty of R.C. 2907.03(A)(6), it must find

that she used power conferred by the state to coerce or force sexual activity by the

misuse of that authority; and (3) consensual sexual conduct between persons sixteen

years or older is legal in Ohio.

**{¶32}**  "Requested jury instructions should ordinarily be given if they are correct

statements of law, if they are applicable to the facts in the case, and if reasonable minds

might reach the conclusion sought by the requested instruction."  *Adams*, 144 Ohio

St.3d 429, 2015-Ohio-3954, 45 N.E.3d 127, at ¶ 240, citing *Murphy v. Carrollton Mfg.

Co.*, 61 Ohio St.3d 585, 591, 575 N.E.2d 828 (1991).

**{¶33}**  Reyes-Rosales first requested that the jury be instructed that R.C.

2907.03(A)(6) requires that the sexual-battery victim be a prisoner or inmate.  As we

noted previously, although this may have been the primary focus of this subsection, the

General Assembly used a term of greater breadth than "prisoner" or "inmate," reaching

other custodial-type settings and not requiring actual imprisonment or physical

detention.  *See Walker*, 140 Ohio App.3d at 455, 748 N.E.2d 79 (2000); *Roy*, 2014-

Ohio-5186, 22 N.E.3d 1112, at ¶ 43; Katz, Martin, Lipton, Giannelli, and Crocker,

*Baldwin's Oh. Prac. Crim L.*, at Section 99:10.  Because the requested instruction was an incorrect statement of law, the trial court correctly refused to give it.

**{¶34}**  Next, Reyes-Rosales requested that the jury be instructed that it could not find her guilty of sexual battery under R.C. 2907.03(A)(6) unless it determined that she used power conferred by the state to coerce or force sexual activity by the misuse of that authority.   Again, this may be an accurate summary of the primary legislative purpose for the adoption of this crime.  *See, e.g., State v. Chipps*, 3d Dist. Union Nos. 14-82-1 and 14-82-2, 1983 WL 7261, *1 (May 17, 1983) ("The statute is directed at those situations where the offender, through power conferred by the State is able to coerce or force sexual activity by the misuse of that authority").  But the jury was properly instructed on the essential elements of the offense, including the "in the custody of law" and the "supervisory or disciplinary authority" requirements.  At best, the requested instruction would have been repetitive and would simply confuse the jury. *See, e.g., State v. Ossege*, 2014-Ohio-3186, 17 N.E.3d 30, ¶ 40 (12th Dist.) ("the trial court is not required to include proposed jury instructions which are repetitive and would simply confuse the jury").  At worst, the requested instruction is an erroneous statement of the law because R.C. 2907.03(A)(6) "does not require proof of coercion, impairment, or other condition."  *See* Katz, Martin, Lipton, Giannelli, and Crocker, *Baldwin's Oh. Prac. Crim L.*, at Section 99:10.  The trial court properly rejected the requested instruction.

**{¶35}**  Finally, Reyes-Rosales requested that the jury be instructed that consensual sexual conduct between persons sixteen years or older is legal in Ohio. Although this statement is generally true, it is not true in the specific circumstances set

forth in R.C. 2907.03(A)(6).  R.C. 2907.03(A)(5) through (13) do not specify any degree of culpability and specifically apply to situations where the defendant has a position of authority to prevent the defendant from taking unconscionable advantage of the victim. "Thus, under those sections, a defendant is still guilty of the offense even if both the defendant and the victim testified that the sexual conduct was consensual." *See State v. Bajaj*, 7th Dist. Columbiana No. 03 CO 16, 2005-Ohio-2931, ¶ 42.  R.C. 2907.03(A)(6) is a strict-liability offense, and the offender's state of mind is irrelevant in determining guilt.  *State v. Maresh*, 8th Dist. Cuyahoga No. 100122, 2014-Ohio-3410, ¶ 34.  Whether the sex between Reyes-Rosales and Z.H. was consensual was thus irrelevant to the R.C. 2907.03(A)(6) sexual-battery charge in the case. The trial court correctly rejected this instruction. We overrule Reyes-Rosales's second assignment of error.

## C.  Judicial Notice

**{¶36}** In her fourth assignment of error Reyes-Rosales claims that the trial court erred by taking judicial notice of the juvenile's confinement to the Children's Home.  The state did request that the trial court take judicial notice that Z.H. was under a court order and was in the custody of Adams County Children's Services in ruling on Reyes-Rosales's motion for judgment of acquittal at the close of the state's case. However, there is no indication on the record that the trial court did so.  Indeed, the issue of whether Z.H. was "in custody of law" when he engaged in sexual conduct with Reyes-Rosales was submitted for resolution by the jury.  Nor was it necessary for the trial court to take judicial notice because Adams County Children's Services Executive Director Wright testified, without objection, that when Reyes-Rosales engaged in sexual conduct

with Z.H., the child was a resident of the Children's Home under a disposition order from the Juvenile Court. Although Reyes-Rosales asserts that the court order was required to establish that Z.H. was "in custody of law," she did not object to Executive Director Wright's testimony based on the best-evidence rule or on any other basis. Because the premise of her assigned error—that the trial court took judicial notice of a court order— is not supported by the record, we overrule Reyes-Rosales's fourth assignment of error.

## IV. CONCLUSION

{¶37}   Therefore, having overruled Reyes-Rosales's assignments of error, we affirm the judgment of the trial court.

                                                    JUDGMENT AFFIRMED.

## JUDGMENT ENTRY

It is ordered that the JUDGMENT IS AFFIRMED and that Appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Adams County Court of Common Pleas to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted.  The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio.  Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J. & McFarland, J.:  Concur in Judgment and Opinion.


For the Court


BY: _____
     William H. Harsha, Judge




## NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**