[Cite as *State v. Hess*, 2021-Ohio-1248.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
MEIGS COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | Case No. 20CA1 |
| Plaintiff-Appellee, | : | |
| v. | : | <u>DECISION AND</u><br><u>JUDGMENT ENTRY</u> |
| JOHN W. HESS, JR., | : | |
| Defendant-Appellant. | : | **RELEASED 4/7/2021** |

<u>APPEARANCES</u>:

Victoria Bader, Assistant State Public Defender, Office of the Ohio Public Defender, Columbus, Ohio, for appellant.

James K. Stanley, Meigs County Prosecuting Attorney, Pomeroy, Ohio, for appellee.

Hess, J.

{¶1}   John W. Hess, Jr. appeals his conviction on two counts of gross sexual imposition in violation of R.C. 2907.05(B), third-degree felonies, and disseminating matter harmful to juveniles in violation of R.C. 2907.31(A)(1), a fifth-degree felony. Hess contends that the conviction was against the manifest weight of the evidence because the victim gave inconsistent, contradictory statements and testimony.

{¶2}   The state presented testimony from the victim that established that she was under the age of twelve years old when, on at least three separate occasions, Hess touched her vagina with either his finger or his tongue with the intent to arouse or gratify his sexual desires. The victim also testified that Hess forced her to watch a pornographic video. The jury is free to accept or reject any and all of the evidence and to assess witness credibility and could reasonably conclude beyond a reasonable doubt this evidence

established that Hess was guilty of gross sexual imposition and disseminating matter harmful to juveniles. Hess's conviction is not against the manifest weight of the evidence.

{¶3}    We reject his argument, overrule his assignment of error, and affirm his conviction.

## I. FACTS

{¶4}    The Meigs County Grand Jury indicted Hess on three counts of rape in violation of R.C. 2907.02(A)(1)(b), first-degree felonies, with sexually violent predator specifications. In a separate case about four months later, the Meigs County Grand Jury indicted Hess on two counts of gross sexual imposition in violation of R.C. 2907.05(B), third-degree felonies; one count of rape in violation of R.C. 2907.02(A)(1)(b), a first-degree felony; and one count of disseminating matter harmful to juveniles in violation of R.C. 2907.31(A)(1), a fifth-degree felony.  This indictment also contained a sexually violent predator specification.  Prior to trial, the two cases were consolidated and one rape count was dismissed. The victim was M.H., a child under the age of twelve. Hess pleaded not guilty and the matter proceeded to trial.

{¶5}    The state presented the testimony of several investigators who interviewed M.H. in 2018 about the alleged sexual conduct by Hess and interviewed her in 2015 about an unrelated allegation. In August 2018 when she was eleven, M.H. reported that Hess had sexually abused her beginning in 2012, between the ages of seven and nine years old. However, in her 2015 interview when she was eight, M.H. denied that anyone had touched her inappropriately. The investigator who conducted the 2015 interview explained that many factors affect how and when a person, including a child, may disclose sexual abuse incidents.

{¶6}    M.H. testified concerning her birth date and that she was twelve years old at the time of trial. She identified Hess in the courtroom.  M.H. described an incident at her seventh birthday party, at which a number of relatives attended, including Hess. She recalled she had a Scooby Doo cake. After she blew out the candles and it became dark outside, Hess took her outside and put her on top of an old inoperable red Firebird automobile that was sitting in the yard. M.H. testified that Hess removed her pants and underwear, licked her vagina, and put his tongue inside her vagina. Hess continued to do this until her father opened the back door and called for her.  The back door was not visible from her location on the automobile.  Sometime after that incident, Hess told M.H. if she told anyone about it, he would kill her and her family.

{¶7}    M.H. testified about a second incident that occurred after the birthday party incident, in which Hess was driving her to church in a truck. M.H. was sitting in the front passenger side and Hess told her to pull down her pants and he inserted his hand under her underwear and touched her vagina and put his finger inside it until they reached a stop sign. M.H. felt a burning sensation when this occurred.

{¶8}    In a third incident, M.H. was at her grandmother's house. M.H. was looking for her Hello Kitty doll and went outside to a camper that was on the property to see if the doll was inside. Hess was inside the camper and she asked him about the doll. M.H. testified that Hess had taken things from her before and that he had taken her underwear when she went swimming in the creek and refused to return them. When she went into the camper in search of her doll, Hess put her on the bed, removed her pants and underwear, laid on top of her, and pushed his penis partially into her vagina. M.H. testified that she felt pain and pressure. The incident ended when her grandmother came to the

backdoor of the house and called for her.  M.H. testified that Hess tried on four different occasions to put his penis into her vagina, but Hess stated that he could not get it all the way in because he was too big.  She did not tell anyone about any of the incidents because of Hess's previous threats to kill her and her family if she did.

{¶9}    M.H. also testified that Hess made her watch a pornographic video. M.H.'s father asked her to go to Hess's camper to ask him a question about something. When she went into the camper, Hess told her to sit down and he would play a cartoon for her. Instead of a cartoon, Hess played a pornographic video. M.H. described the video as a woman and man engaged in sexual intercourse. The man ejaculated into the woman and the woman expelled the semen into a bowl and ate it. Hess told her "now that you watched that, do it to me." However, immediately after the video ended, M.H.'s father knocked on the camper door looking for her.

{¶10}  M.H. testified that she eventually told her parents about the abuse but they did nothing, "I told my mom and dad but then like I guess they were like half asleep maybe it was just a dream like me thinking that . . . that I'm going to tell them."  In the summer of 2018, M.H. went to Florida for two to three weeks to visit an aunt. She told the aunt about the abuse, who informed authorities. M.H. recalled being interviewed in 2015, but she testified that she did not report the sexual abuse to the interviewer then because Hess had threatened her and her family.

{¶11} Hess testified and denied ever being alone with M.H., engaging in sexual conduct with her, or showing her a pornographic video.  Hess admitted he had a prior felony conviction for gross sexual imposition, but stated that because of the conviction,

he voluntarily chose not to be alone with children and his entire family knew about his prior conviction.

{¶12}   The jury found Hess not guilty of rape, but guilty of the two gross sexual imposition counts and disseminating matter harmful to juveniles. The trial court determined that Hess was a sexually violent predator and that he had previous convictions for gross sexual imposition for which he had been imprisoned. The trial court sentenced Hess to a total prison term of 11 years to life and ordered him to register as a Tier III sex offender.

## II. ASSIGNMENT OF ERROR

{¶13}   Hess assigns the following error for our review:

> MR. HESS' CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE. FIFTH AND FOURTEENTH AMENDMENTS, U.S. CONSTITUTION; ARTICLE I, SECTIONS 10 AND 16, OHIO CONSTITUTION. (9/17/19 T.pp. 184-266; 9/18/19 T.pp. 6-208; 9/19/19 T.pp. 19-25; 9/20/19 Verdict Forms).

## III. LAW AND ANALYSIS

### A. Manifest Weight of the Evidence

{¶14}   In his sole assignment of error Hess asserts that his gross sexual imposition and disseminating matter harmful to juveniles' convictions are against the manifest weight of the evidence.

### 1. Standard of Review

{¶15}   In determining whether a criminal conviction is against the manifest weight of the evidence, we must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest

miscarriage of justice that we must reverse the conviction. *State v. Thompkins,* 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997); *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶ 119; *State v. Phillips*, 4th Dist. Scioto No. 18CA3832, 2018-Ohio-5432, ¶ 23.

**{¶16}** To satisfy its burden of proof, the state must present enough substantial credible evidence to allow the trier of fact to conclude that the state had proven all the essential elements of the offense beyond a reasonable doubt. *State v. Smith,* 2020-Ohio-5316, 162 N.E.3d 898, ¶ 31 (4th Dist.), citing *State v. Eskridge*, 38 Ohio St.3d 56, 526 N.E.2d 304, syllabus (1988). However, it is the role of the jury to determine the weight and credibility of evidence. *See State v. Kirkland,* 140 Ohio St.3d 73, 2014-Ohio-1966, 15 N.E.3d 818, ¶ 132. " 'A jury, sitting as the trier of fact, is free to believe all, part or none of the testimony of any witness who appears before it.' " *State v. Reyes-Rosales*, 4th Dist. Adams No. 15CA1010, 2016-Ohio-3338, ¶ 17, quoting *State v. West,* 4th Dist. Scioto No. 12CA3507, 2014-Ohio-1941, ¶ 23. We defer to the trier of fact on these evidentiary weight and credibility issues because it is in the best position to gauge the witnesses' demeanor, gestures, and voice inflections, and to use these observations to weigh their credibility. *Id.; State v. Koon*, 4th Dist. Hocking No. 15CA17, 2016-Ohio-416, ¶ 18.

2. Gross Sexual Imposition & Disseminating Matter Harmful to Juveniles

**{¶17}** Hess contends that his convictions for gross sexual imposition and disseminating matter harmful to juveniles were against the manifest weight of the evidence because the victim gave conflicting statements to investigators and her trial testimony was inconsistent with the statements she provided to investigators and a treating physician. Specifically, M.H. was interviewed by an investigator concerning

allegations involving her father in 2015 when she was eight years old and she denied that anyone had touched her inappropriately. However, in 2018, when M.H. was 11 years old, she told an interviewing investigator that Hess and his brother James Hess both had touched her vagina and had raped her. Hess argues that because of these conflicting statements, M.H. "lacks sufficient credibility."

**{¶18}** Hess also argues that, during the 2018 interview, M.H. discussed incidents involving him and his brother James, but in a medical report, the physician noted that M.H. denied that anyone but he had touched or hurt her. Hess argues that this "casts doubt on the reliability of her recollections." Hess contends that M.H. was also inconsistent about whether she told her parents about the incidents. M.H. stated in the 2018 interview that she told her parents, but testified at trial that she thought she told them, but they could have been half asleep or maybe she had dreamt she told them. Finally, Hess argues that M.H. told the interviewer that Hess raped her possibly three times, but the physician's report indicated that M.H. told the physician that she was molested and raped 14 times. Hess argues that these inconsistencies showed that M.H. lacked sufficient credibility.

**{¶19}** The state had to present enough substantial credible evidence to allow the jury to conclude that all the elements of gross sexual imposition and disseminating matter harmful to juveniles were proven beyond a reasonable doubt. R.C. 2907.05(B) prohibits gross sexual imposition and provides: "No person shall knowingly touch the genitalia of another, when the touching is not through clothing, the other person is less than twelve years of age, whether or not the offender knows the age of that person, and the touching is done with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual

desire of any person." R.C. 2907.31(A)(1) prohibits disseminating matter harmful to juveniles and provides: ("A) No person, with knowledge of its character or content, shall recklessly do any of the following: (1) Directly sell, deliver, furnish, disseminate, provide, exhibit, rent, or present to a juvenile, a group of juveniles, a law enforcement officer posing as a juvenile, or a group of law enforcement officers posing as juveniles any material or performance that is obscene or harmful to juveniles * * *."

{¶20} Hess does not specifically address the disseminating matter harmful to juveniles count in his appellate brief. As to the gross sexual imposition counts, he does not challenge M.H.'s age, nor does he contend that the touching occurred but was innocent and for non-sexual reasons. Rather Hess contends that the verdict was against the manifest weight of the evidence because the jury should not have believed M.H. However, M.H.'s testimony established all the elements of gross sexual imposition and disseminating matter harmful to juveniles and the jury found her testimony credible. The jury had an advantage over us in assessing her credibility and the weight to afford her testimony. The weight and credibility of evidence are to be determined by the trier of fact. *Matter of R.C.,* 2020-Ohio-1486, 153 N.E.3d 538, ¶ 57 (4th Dist.); *State v. West,* 4th Dist. Scioto No. 12CA3507, 2014-Ohio-1941, ¶ 23. "A jury, sitting as the trier of fact, is free to believe all, part or none of the testimony of any witness who appears before it." *Id.* We defer to the trier of fact on these evidentiary weight and credibility issues because it is in the best position to gauge the witnesses' demeanor, gestures, and voice inflections, and to use these observations to weigh their credibility. *Id.; see also State v. Minton*, 2016-Ohio-5427, 69 N.E.3d 1108, ¶ 79-80 (4th Dist.).

**{¶21}** Additionally, the evidence supports the jury's finding that the touching occurred for the purpose of sexual gratification. We explained the proof of sexual gratification as follows:

> Proof of sexual gratification generally must be accomplished by inference rather than by direct evidence. See *State v. Cobb* (1991), 81 Ohio App.3d 179, 185, 610 N.E.2d 1009, 1012. In *Cobb,* the court noted that: "[T]he proper method is to permit the trier of fact to infer from the evidence presented at trial whether the purpose of the defendant was sexual arousal or gratification by his contact with those areas of the body described in R.C. 2907.01. In making its decision the trier of fact may consider the type, nature and circumstances of the contact, along with the personality of the defendant. From these facts the trier of fact may infer what the defendant's motivation was in making the physical contact with the victim. If the trier of fact determines, that the defendant was motivated by desires of sexual arousal or gratification, and that the contact occurred, then the trier of fact may conclude that the object of the defendant's motivation was achieved." *Id. See, also*, *In re Anderson* (1996), 116 Ohio App.3d 441, 688 N.E.2d 545; *In re Salyers* (June 10, 1998), Ross App. Nos. 97CA2312 and 2319 [1998 WL 321591]; *In re Bloxson* (Feb. 6, 1998), Geauga App. No. 97–G–2062 [1998 WL 172998] (stating that "[a] sexual purpose can be inferred from the nature of the act itself if a reasonable person would find that act sexually stimulating to either the offender or the victim").

(Brackets sic.) *In re Higginbotham*, 4th Dist. Lawrence No. 04CA26, 2004-Ohio-6004, ¶ 18; *Matter of R.C.* at ¶ 59. Sufficient evidence exists from which the jury reasonably could have inferred that Hess committed the acts for purposes of sexual arousal or gratification. A reasonable person could conclude that Hess's touching of M.H.'s vagina with his tongue and finger constituted contact for purposes of sexual gratification or arousal as there is no innocent explanation for this behavior.

**{¶22}** Having reviewed the testimony and the other evidence adduced at trial, we do not believe that the jury clearly lost its way in convicting Hess of gross sexual imposition and disseminating matter harmful to juveniles. Thus, the verdict was not

against the manifest weight of the evidence. We overrule Hess's sole assignment of error.

## IV. CONCLUSION

{¶21}  We overrule Hess's assignment of error and affirm the judgment of the trial court.

JUDGMENT AFFIRMED.

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS AFFIRMED and that Appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Meigs County Court of Common Pleas to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty-day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Smith, P.J. & Abele, J.: Concur in Judgment and Opinion.


For the Court


BY: _____
       Michael D. Hess, Judge


### **NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**