OPINION
{¶ 1} Plaintiff-appellant, Lori A. McClung ("appellant"), sought and was granted a divorce from defendant-appellee, Charles A. McClung ("appellee"). The court's final judgment entry and decree of divorce included determinations on the division of marital property and the appropriateness of spousal support. Appellant timely filed this appeal from the trial court's judgment entry. For the reasons that follow, we affirm the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations.
 {¶ 2} Appellant and appellee were married in October 1981, separated in October 1999, and were granted a divorce in October 2002. The marriage produced two children. After appellant filed for divorce, she continued to live with the children in the marital home. Appellant was designated as the residential parent and custodian of the children, with visitation privileges awarded to appellee. Appellee paid child support and spousal support to appellant pursuant to temporary orders pending a final judgment and decree of divorce.
 {¶ 3} During the marriage, appellee provided most of the family financial support. Appellant worked as a bookkeeper before the marriage, and during the marriage she occasionally worked part-time outside the home. The parties stipulated that appellant's annual income was $23,205 and appellee's annual income was $65,463. Each party was 40 years old and in good physical health at the time of trial. The parties resolved the issues of child custody, visitation, health insurance, and the division of personal property by stipulation.
 {¶ 4} Each party acknowledged having filed a petition in bankruptcy after they separated and having been discharged from all marital consumer debt. The parties also discharged the mortgage arrearages that had accrued prior to seeking bankruptcy protection. However, as explained below, the mortgage lien survived the bankruptcy proceeding and remains attached to the marital house. Thus, it is the only marital debt for which the parties are jointly responsible.
 {¶ 5} Based on testimony at trial, the court determined that the equity in the marital house was $28,716 and that appellee was entitled to half that amount, minus an adjustment for a house payment that appellant was required to make but did not. The judgment allows appellant 120 days to pay appellee his share of the equity. The court order states that if appellant is unable to reimburse appellee his share of the equity, the house is to be sold and the proceeds are to be divided equally after payment of the costs of sale. The court ordered appellee to reimburse appellant for the missed payment out of his share of the proceeds. The trial court also awarded spousal support of $500 monthly and child support of $868.15 monthly to appellant.[1]
 {¶ 6} Appellant sets forth two assignments of error for our review:
1. That the trial court erred in distributing the marital estate, awarding appellee one-half interest in the home and ordering appellant to pay the expenses.
2. That the trial court erred and abused it[s] discretion in awarding minimum spousal support contrary to the facts and failing to properly apply the factors promulgated in Ohio Revised Code Sec. 3105.18(C).
 {¶ 7} A trial court has broad discretion to determine how to equitably divide a marital estate. Kaechele v. Kaechele (1988),35 Ohio St.3d 93, 95. However, the exercise of that discretion must comport with R.C. 3105.171(F) and (G), which require the trial court to consider enumerated factors and to make written findings of fact supporting its determination. The court's decision need not extensively itemize and separately discuss each of the nine factors contained in R.C. 3105.171(F), but it must be apparent from the face of the decision that the statutory factors were considered. Casper v. DeFranscisco (Feb. 19, 2002), Franklin App. No. 01AP-604. If the trial court's decision meets the statutory requirements, our review is then limited to determining whether the trial court's decision is an abuse of discretion. Cherry v. Cherry (1981), 66 Ohio St.2d 348, 355.
 {¶ 8} In order to constitute an abuse of discretion, the court's decision must be so grossly inconsistent with fact or logic that it displays "not the exercise of reason but instead passion or bias." Vaught v. Cleveland Clinic Found.,98 Ohio St.3d 485, 487, 2003-Ohio-2181. It is described as being more than an error of law or judgment; it implies the court's attitude was arbitrary, unreasonable, or unconscionable. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219. An appellate court should not substitute its judgment for that of the trial court when applying the abuse of discretion standard. State ex rel.Duncan v. Chippewa Twp. Trustees (1995), 73 Ohio St.3d 728, 732. Moreover, a trial court has not abused its discretion simply because a reviewing court could maintain a different opinion.Guernsey Bank v. Varga, Franklin App. No. 01AP-1129, 2002-Ohio-3336; McGee v. C S Lounge (1996),108 Ohio App.3d 656, 660.
 {¶ 9} Appellant's first assignment of error focuses on the trial court's decision to award one-half of the equity in the marital house to appellee. Appellant contends the trial court's decision on this issue did not properly reflect consideration of the factors set forth in R.C. 3105.171(F), and in particular the effect of the parties' respective bankruptcies. Appellant also claims the trial court ordered her to pay a debt that was discharged in bankruptcy, contrary to this court's decision inCasper, supra.
 {¶ 10} The filing of a bankruptcy petition creates a bankruptcy estate, consisting of all property in which the debtor has a legal or equitable interest. Section 541, Title 11, U.S.Code. Appellant and appellee each sought the protection of Chapter 7 of the bankruptcy code. When a bankruptcy petition is filed under Chapter 7, a trustee is appointed to manage and liquidate the bankruptcy estate by marshalling the debtor's assets, selling them, and applying the proceeds equitably for the creditors' benefit. Sections 701-704, Title 11, U.S.Code. Generally, and with exceptions not applicable here, a lien that was perfected before the bankruptcy petition was filed is not affected by the bankruptcy because the debtor no longer had an equitable interest in the property. Section 541(a)(1), (2), Title 11, U.S.Code.
 {¶ 11} When a bankruptcy estate's asset is encumbered with debt that equals or exceeds the bankruptcy trustee's estimate of the asset's value, or would cost more to administer than would be recovered to pay creditors, the bankruptcy trustee may abandon the asset. Section 554, Title 11, U.S.Code. Once a bankruptcy trustee abandons property, the abandonment is irrevocable unless the property has been concealed or information concerning the property has not been properly disclosed, even if it is later determined that the property is more valuable than the bankruptcy trustee originally believed. Killebrew v. Brewer (C.A. 5, 1989),888 F.2d 1516, 1520. Property that the bankruptcy trustee abandons is no longer part of the bankruptcy estate. It therefore reverts to the debtor as if no bankruptcy petition had been filed. Shaker Heights v. Green, Cuyahoga App. No. 82236, 2003-Ohio-4068; see, also, Ohio v. Kovacs (1985), 469 U.S. 274,284-285, 105 S.Ct. 1438.
 {¶ 12} When a debtor completes his or her obligations to the bankruptcy estate, he or she receives a discharge. Sections 524, 727, Title 11, U.S.Code. The discharge relieves a debtor of personal liability for all pre-petition debt and enjoins any action to collect, recover, or offset a discharged obligation. Section 524(a), Title 11, U.S.Code.
 {¶ 13} In this case, the bankruptcy trustee valued the marital house at $135,000 with a mortgage debt exceeding $133,000. Accordingly, he exercised his statutory authority to abandon the property because its value for bankruptcy purposes beyond the mortgage debt was de minimis. However, the mortgage holder still holds a secured lien against the marital house, which survives the bankruptcy and continues until foreclosure or until the mortgage is satisfied. Dewsnup v. Timm (1992),502 U.S. 410, 417, 112 S.Ct. 773. Having been abandoned by the trustee, the marital house reverted to its ownership status as of the time the petition was filed; that is, jointly owned by appellant and appellee and subject to the mortgage they granted to the bank. The bankruptcy discharge relieved appellant and appellee of any obligation to pay any pre-petition mortgage arrearages. However, it did not release appellant and appellee from continued obligations for property retained by them. ShakerHeights, supra.
 {¶ 14} Though the bankruptcy trustee had abandoned the marital home, expert testimony presented at trial in this case placed its value at $162,000. The trial court found the testimony on the significantly higher valuation to be credible. Because the bankruptcy trustee's decision to abandon the property is irrevocable, the home equity belongs to appellant and appellee as if no bankruptcy had been filed. Thus, the trial court had to make an allocation of an asset that the bankruptcy trustee had abandoned as having little or no value.
 {¶ 15} By subtracting the mortgage balance, to which the parties had stipulated, from the $162,000 market value accepted by the court for these proceedings, the trial court determined the "marital equity in the marital house is $28,716.00." (Decision at 14.) The trial court determined that though appellant continued to make the house payments after the parties separated, she was only able to do so with appellee's financial support, and that he should not be deprived of his entire marital interest in the house.
 {¶ 16} The trial court therefore ordered the home equity, which accrued during the marriage, to be equally divided, with one adjustment. Appellee was responsible for the March 2001 house payment and he did not fulfill that obligation. Appellee was ordered to pay appellant the March 2001 payment and related late fees out of his share of the equity. If appellant could not pay appellee his share of the equity within 120 days, the trial court ordered her to list the house for sale at its appraised price of $162,000. The trial court's order permits the sales price to be reduced at certain intervals until it reaches $135,000, which was its value for purposes of the bankruptcy proceedings. If the house can be sold for higher than the appraised price, the court's order allocates any overage to appellant.
 {¶ 17} In sum, the respective bankruptcy petitions of appellant and appellee had the same effect on each of them. Each party was relieved of any consumer debt that accrued during the marriage. Appellant and appellee were each relieved of personal liability for prior debt on the mortgage. Each retained the ownership interest in the marital home that existed at the time the bankruptcy petitions were filed. The trial court awarded full ownership of the home to appellant and divided its equity equally, except for an equitable adjustment to compensate appellant for appellee's failure to make a required payment.
 {¶ 18} Reading the trial court's decision as a whole, we find it properly considered the factors in R.C. 3105.171(F) and set forth reasons to support its decision. Therefore, we cannot say the trial court abused its discretion in allocating the equity in the marital house in the manner it did. Additionally, we find nothing in the trial court's order directing appellant to pay any discharged, or pre-bankruptcy, debt. The payments appellant is now making on the mortgage are post-petition payments to satisfy a lien that survived bankruptcy. Shaker Heights, supra.
 {¶ 19} The trial court's order does acknowledge there could be expenses associated with the sale of the house if a sale becomes necessary. These expenses, if they occur, are post-petition expenses and as such are not affected by the bankruptcy proceeding. Moreover, the trial court ordered the expenses of sale to be shared equally between appellant and appellee, ordering them to be paid out of the proceeds before the equity is divided. (Decision at 15.) Because we find no abuse of discretion in these rulings, appellant's first assignment of error is overruled.
 {¶ 20} Appellant's second assignment of error contends the trial court abused its discretion by failing to properly apply the factors promulgated in R.C. 3105.18(C) in determining the amount of spousal support to award.
 {¶ 21} A trial court's decision on spousal support will not be modified on appeal unless the trial court abused its discretion in making the award. Kunkle v. Kunkle (1990),51 Ohio St.3d 64, 67. In making such an award, the trial court must consider all of the factors set forth in R.C. 3105.18(B). Its decision also must provide sufficient detail to enable a reviewing court to determine the award is fair, equitable, and in accordance with law. Kaechele, supra. The trial court is not required to comment on each statutory factor. Rather, the record need only show the court considered them in making its award.Carman v. Carman (1996), 109 Ohio App.3d 698, 703; Casper,
supra.
 {¶ 22} Appellant contends the trial court's spousal support award leaves her with less household income than she needs to meet her household expenses. The trial court awarded $868.15 monthly in child support and $500 monthly in spousal support. Appellant stipulated to a projected annual income of $23,205, or $1,933.75 monthly. Combined, these three sources produce $3,301.90 in monthly household income.
 {¶ 23} The record contains three different monthly expense budgets for appellant. Appellant submitted a written monthly expense budget of $6,385. (Appellant's Exhibit 2.) At trial, appellant testified to various monthly expenses totaling approximately $3,750. (Tr. at 26-33.) Appellee presented a written monthly budget for appellant of $2,750 that appellant prepared and submitted in federal court as part of her bankruptcy proceeding.[2] (Appellee's Exhibit A.)
 {¶ 24} The trial court was in the best position to determine the relative weight to be accorded each of the three budgets appellant prepared. Thus, it was within the trial court's discretion to determine the monthly budget of $2,750 that appellant submitted to the bankruptcy court was the most accurate reflection of her monthly household expenses. When the child support and spousal support awards are combined with appellant's stipulated income, her monthly household income of $3,301.90 exceeds her monthly household budget of $2,750 by approximately $550.
 {¶ 25} Appellant contends the spousal support award should have been greater because she was primarily a homemaker during the 21-year marriage. However, the trial court's decision notes appellant has work experience outside the home and that she is presently employed. Appellant testified at trial that she expects her ability to work will improve when the divorce proceedings are finalized. Appellant is not burdened with marital debt other than the marital home, which appellant has voluntarily assumed. Finally, the trial court retained jurisdiction to modify the spousal support award based on a change in circumstances.
 {¶ 26} The trial court's decision specifically states it considered all the statutory factors in arriving at its spousal support award. "[W]hen a trial court specifically indicates that it has reviewed the appropriate statutory factors, there is a strong presumption that the factors were indeed considered."Huffman v. Huffman, Franklin App. No. 01AP-726, 2002-Ohio-2565. Moreover, an examination of the trial court's decision shows it set forth each statutory factor and discussed it separately. Considering the totality of the circumstances, we cannot find the trial court abused its discretion in making its spousal support award. Accordingly, appellant's second assignment of error is overruled.
 {¶ 27} For the foregoing reasons, appellant's first and second assignments of error are overruled. The judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, is hereby affirmed.
Judgment affirmed.
Lazarus, P.J., and Watson, JJ., concur.
[1] Neither party has appealed the amount of the child support award.
[2] The trial court's decision inaccurately states that the $2,750 monthly budget amount was introduced through trial testimony rather than as an exhibit. (Decision at 20.) No objection to its introduction was noted. (Tr. 68-71.) The error in the mischaracterization of how the evidence is in the record is harmless.