[Cite as *Clifford v. Skaggs*, 2017-Ohio-8597.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
GALLIA COUNTY

| | | |
|---|---|---|
| HEATHER CLIFFORD, | : | Case No. 17CA6 |
| Plaintiff-Appellee, | : | |
| v. | : | DECISION AND JUDGMENT ENTRY |
| JOSHUA SKAGGS, | : | RELEASED: 11/03/2017 |
| Defendant-Appellant. | : | |

APPEARANCES:

Lorene G. Johnston, Jackson, Ohio for appellant.

Adam R. Salisbury, Pomeroy, Ohio for appellee.

Harsha, J.

{¶1}     Joshua W. Skaggs appeals from a judgment entry granting a divorce. Skaggs contends that the trial court erred in ordering him to reimburse his former spouse Heather Clifford for certain childcare expenses and to pay her spousal support. Skaggs also contends that the trial court failed to follow statutory requirements governing child support and the shared parenting plan.

{¶2}     The trial court did not abuse its discretion in ordering Skaggs to reimburse Clifford for childcare expense. There is competent, credible evidence in the record that Skaggs stopped paying the childcare provider when his summer parenting time commenced. The trial court was not unreasonable, arbitrary, or unconscionable when it determined that Skaggs owed eight weeks of childcare expenses at $200 per week. Nor did the trial court did abuse its discretion in awarding spousal and child support. The record shows that the court considered the relevant statutory factors and found that the parties' relative disparity in incomes and overall high standard of living warranted

the amount and duration of spousal and child support.  However, the trial court failed to enter the statutorily required findings of fact and conclusions of law when approving Clifford's revised shared parenting plan. Therefore, we reverse the trial court's judgment and remand so that the court can enter proper factual findings and conclusions of law addressing the reasons for approving the shared parenting plan.

## I. FACTS

{¶3}    Skaggs and Clifford were married in 2008 and have one child born in 2010.  They filed for divorce in 2014. Skaggs filed a shared parenting plan; Clifford opposed it and filed her own shared parenting plan. Clifford also filed a motion seeking contempt findings against Skaggs for failing to pay childcare expenses in July 2016 in violation of the court's temporary order. Clifford subsequently withdrew the motion.[1] Prior to trial the parties agreed to the division of certain marital assets and debts and the trial court entered a judgment entry reflecting that agreement.

{¶4}    At trial the parties presented evidence on the remaining disputed issues: (1) the unpaid childcare expenses; (2) allocation of certain medical expenses for the child; (3) federal tax exemption; (4) allocation of psychological evaluation costs; (5) spousal support; and (6) parental rights, child custody and support. The trial court issued a decision that:  (1) ordered Skaggs to reimburse Clifford $1,600.00 for childcare expenses that Skaggs owed under the temporary order; (2) split equally the child's medical expenses at issue and ordered Skaggs to reimburse Clifford for his half in the sum of $2,546.45; (3) allocated the federal tax exemption; (4) allocated all of the

---

[1] The record contains no written or oral withdrawal of this motion. However, the trial court's decision states that it was withdrawn and the parties do not dispute it. Clifford's affidavit in support of the motion is part of the record.

psychological evaluation costs to Skaggs; (5) awarded Clifford spousal support of $600 per month for one year; and (6) decided that the child would reside with Clifford and that Skaggs would have parenting time according to a modified version of the Gallia County standard order of visitation/parenting time, determined that it would be in the child's best interest to attend Green Elementary School, required Skaggs to maintain medical insurance for the child, ordered all non-insured medical expenses be split equally between them, and ordered the parties to submit child support calculations without deviations.

{¶5} As to the parties' shared parenting plans, the trial court instructed Clifford to submit a revised version of her shared parenting plan that addressed the objections or criticisms in the decision. Skaggs was given an opportunity to respond.

{¶6} Skaggs requested separate findings of fact and conclusions of law pursuant to Civ.R. 52. The trial court declined to do so because it concluded the decision it issued included facts and reasoning. The trial court issued a judgment entry decree of divorce that included the determinations made in its prior decision, adopted Clifford's revised shared parenting plan, and ordered Skaggs to pay child support of $1,326.14 per month.

{¶7} Skaggs appealed, challenging the awards of $1,600.00 in childcare expenses, spousal and child support, and the shared parenting plan.

## II. ASSIGNMENTS OF ERROR

{¶8} Skaggs assigns the following errors for our review:

1. THE TRIAL COURT ERRED IN ORDERING DEFENDANT-APPELLANT TO REIMBURSE PLAINTIFF-APPELLEE ONE THOUSAND SIX HUNDRED DOLLARS ($1,600) FOR CHILD CARE

EXPENSES SHE INCURRED IN THE SUMMER OF 2016 AS IT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

2. THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT SET AN INAPPROPRIATE AND UNREASONABLE AMOUNT AND DURATION FOR SPOUSAL SUPPORT AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

3. THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT FAILED TO FOLLOW THE MANDATES OF OHIO REVISED CODE §3119.04(B) AS THE PARTIES' COMBINED INCOME EXCEEDED ONE HUNDRED FIFTY THOUSAND DOLLARS ($150,000).

4. THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT ADOPTED A SHARED PARENTING PLAN THAT WAS NOT PROPOSED BY EITHER PARTY IN ACCORDANCE WITH OHIO REVISED CODE SECTION 3109.04 AND WAS NOT SUPPORTED BY THE MANIFEST WEIGHT OF THE EVIDENCE.

## III. STANDARD OF REVIEW

{¶9}   Appellate courts generally review "the propriety of a trial court's determination in a domestic relations case" under the "abuse of discretion" standard. *Booth v. Booth*, 44 Ohio St.3d 142, 144, 541 N.E.2d 1028 (1989) (abuse of discretion standard applies to child support, custody, visitation, spousal support, and division of marital property). Under the abuse of discretion standard of review, a reviewing court must affirm the decision of the trial court unless it is unreasonable, arbitrary, or unconscionable. *Breedlove v. Breedlove*, 4th Dist. Washington No. 08CA10, 2008-Ohio-4887, ¶ 9 citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 140 (1983). " '[A]buse of discretion' [is] * * * a view or action that no conscientious judge could honestly have taken.' " *State v. Kirkland*, 140 Ohio St.3d 73, 2014-Ohio-1966, 15 N.E.3d 818, ¶ 67, quoting *State v. Brady*, 119 Ohio St.3d 375, 2008-Ohio-4493, 894 N.E.2d 671, ¶ 23. "Indeed, to show an abuse of discretion, the result must be so

palpably and grossly violative of fact or logic that it evidences not the exercise of will but the perversity of will, not the exercise of judgment but the defiance of judgment, not the exercise of reason but instead passion or bias." *White v. White*, 4th Dist. Gallia No. 03CA11, 2003-Ohio-6316, ¶ 25, citing *Nakoff v. Fairview Gen. Hosp.*, 75 Ohio St.3d 254, 256, 662 N.E.2d 1 (1996). Under this highly deferential standard of review, appellate courts may not freely substitute their judgment for that of the trial court. *In re Jane Doe I*, 57 Ohio St.3d 135, 137-138, 566 N.E.2d 1181 (1991). The application of this standard in custody and support cases is warranted because trial courts have wide latitude in considering the evidence, and assessing the parties' demeanor, attitude, and credibility. *See Massie v. Simmons*, 4th Dist. Scioto No. 14CA3630, 2014-Ohio-5835, ¶ 18, citing *Davis v. Flickinger*, 77 Ohio St.3d 415, 418-419, 674 N.E.2d 1159 (1997).

## IV. LAW AND ANALYSIS

### A. Childcare Expenses

**{¶10}** In his first assignment of error Skaggs asserts that the trial court erred when it ordered him to reimburse Clifford $1,600 in childcare expenses. As a preliminary argument Skaggs contends that he made a timely request for findings of fact and conclusions of law under Civ.R. 52 and the trial court's alleged refusal to make them is a reversible error. Clifford contends that Skaggs waived this argument by failing to raise it as a separate assignment of error.

**{¶11}** "Ordinarily, upon a proper request for findings of fact and conclusions of law, no final appealable order exists until the court complies with Civ.R. 52, i.e., it issues its findings of fact and conclusions of law." *First Natl. Bank v. Netherton*, 4th Dist. Pike No. 04CA731, 2004-Ohio-7284, ¶ 8, citing *Walker v. Doup*, 36 Ohio St.3d 229, 522

N.E.2d 1072 (1988) syllabus; *Caudill v. Caudill*, 71 Ohio App.3d 564, 565, 594 N.E.2d 1096 (4th Dist. 1991). Because the failure to issue findings of fact and conclusions of law pursuant to Civ.R. 52 raises a threshold jurisdictional issue, we address it even though Skaggs did not raise it as a separate assignment of error. "We must sua sponte dismiss an appeal that is not from a final appealable order." *First Natl. Bank* at ¶ 7.

{¶12}  Civ.R. 52 provides:

When questions of fact are tried by the court without a jury, judgment may be general for the prevailing party unless one of the parties in writing requests otherwise before the entry of judgment pursuant to Civ. R. 58, or not later than seven days after the party filing the request has been given notice of the court's announcement of its decision, whichever is later, in which case, the court shall state in writing the findings of fact found separately from the conclusions of law.

\*                    \*                    \*

An opinion or memorandum of decision filed in the action prior to judgment entry and containing findings of fact and conclusions of law stated separately shall be sufficient to satisfy the requirements of this rule and Civ.R. 41(B)(2).

{¶13}  "A trial court substantially complies with Civ.R. 52 if 'the contents of the opinion, when considered together with other parts of the record, form an adequate basis upon which to decide the narrow legal issues presented.' " *Graves v. Graves*, 4th Dist. Vinton No. 14CA694, 2014-Ohio-5812, ¶ 36 quoting *State ex rel. Gilbert v. Cincinnati,* 125 Ohio St.3d 385, 2010–Ohio–1473, 928 N.E.2d 706, ¶ 38; accord *Nolan v. Nolan*, 4th Dist. Scioto No. 11CA3444, 2012–Ohio–3736, ¶ 40. Findings and conclusions " 'must articulate an adequate basis upon which a party can mount a challenge to, and the appellate court can make a determination as to the propriety of, resolved disputed issues of fact and the trial court's application of the law.' " *Truex v. Truex*, 179 Ohio App.3d 188, 195, 2008–Ohio–5690, 901 N.E.2d 259, ¶ 27 (5th Dist.)

quoting *Kroeger v. Ryder*, 86 Ohio App.3d 438, 442, 621 N.E.2d 534 (6th Dist. 1993). "A trial court's decision reciting various facts and a legal conclusion satisfies the requirements of Civ.R. 52 when, together with other parts of the trial court's record, the decision forms an adequate basis upon which to decide the legal issue presented upon appeal." *Mahlerwein v. Mahlerwein*, 160 Ohio App.3d 564, 2005–Ohio–1835, ¶ 22 (4th Dist.).

{¶14} Here the trial court denied Skaggs's request for findings of fact and conclusions of law because it had issued a decision prior to the judgment entry that contained factual findings and legal conclusions. The trial court's prior decision was sufficient to satisfy the Civ.R. 52 requirement. That decision, together with its divorce decree and other parts of the record, form an adequate basis for us to decide the legal issues presented in the appeal.

{¶15} Although the trial court's decision together with the judgment entry satisfies Civ.R. 52 and we have jurisdiction over the appeal, whether the trial court complied with the statutory requirement for findings of fact and conclusions of law addressing the reasons for approving the shared parenting plan presents a separate, nonjurisdictional issue. *See* R.C. 3109.04(D)(1)(a)(ii) ("If the court approves a plan * * * the court shall enter in the record of the case findings of fact and conclusions of law as to the reasons for the approval * * *.")  We discuss this issue more fully when we address Skaggs's fourth assignment of error, but raise it here to clarify that such a failure would not raise jurisdictional concerns.

{¶16} Next Skaggs argues that the trial court lacked jurisdiction to determine whether Skaggs owed childcare expenses because Clifford withdrew her contempt

motion. Skaggs's obligation to pay childcare expenses was part of the trial court's temporary orders that the court had jurisdiction to enforce or modify. *In the Matter of J.L.R. and M.M.R.*, 4th Dist. Washington No. 08CA17, 2009-Ohio-5812, ¶ 29 (temporary orders concerning custody and support are interlocutory orders). At trial Clifford's counsel stated that the unpaid childcare expense was a disputed issue that would be tried, witnesses gave testimony about childcare expenses, Skaggs's counsel did not object, and the trial court clarified during trial that although the contempt motion had been withdrawn, Clifford was still seeking reimbursement of the underlying unpaid childcare expense. [2] We find that the allocation and amount of childcare expenses were soundly within the trial court's jurisdiction, even if Clifford was no longer seeking to hold Skaggs in contempt for his failure to pay it.

{¶17}  Skaggs also contends that there was no competent, credible evidence supporting a $1,600 childcare expense award. He argues that the testimony supported a $1,000 award.

{¶18}  The childcare provider, Patty Beach, testified that she received $200 a week salary from Skaggs and that sometime in July 2016 Skaggs stopped paying her and Clifford took over the payments. Beach testified that the second half of the summer Skaggs had the child full time but that she worked one day each week during that time and was still entitled to receive her weekly salary. Beach testified that it had been approximately five to six weeks since Skaggs had paid her, but that she was uncertain

---

[2] In cases of civil contempt, a court imposes a sanction with the purpose to coerce a party in violation of a court order to comply with the order for the benefit of the complaining party. *Liming v. Damos*, 133 Ohio St.3d 509, 2012-Ohio-4783, 979 N.E.2d 297, ¶ 12. Clifford decided not to pursue sanctions, but maintained her claim for reimbursement of the childcare expenses she paid out that were Skaggs's responsibility.

the precise date Skaggs stopped paying. Beach's testimony about the amount Skaggs owed was unclear. Beach first said "yes" when asked if the amount owed was $1,600 and then "I don't know." In response to questions from the trial court, Beach testified that during the second half of the summer when the child was with Skaggs full time, Skaggs stopped paying her and Clifford started paying her salary. Skaggs testified that as of the time of trial August 25, 2016, he had not paid Beach for approximately five weeks. Clifford's affidavit stated that Skaggs stopped paying Beach when he started exercising his summer parenting time and that as of the date of her affidavit, July 22, 2016, she had paid three weeks ($600) of childcare that Skaggs owed.[3] After the trial the court modified the temporary order and terminated Skaggs's obligation to pay for childcare as of August 25, 2016.

{¶19} The trial court did not abuse its discretion in awarding Clifford $1,600 in childcare expenses. The record contained competent, credible evidence that Skaggs stopped paying Beach when his summer parenting time commenced. Beach testified that Skaggs did not pay her during his summer parenting time. Clifford testified that she paid the first three weeks of July 2016 (as of July 22, 2016) and Skaggs admitted he had not paid Beach for the last five weeks (as of August 25, 2016). Based upon these dates Skaggs had not paid childcare for a total of eight weeks. The trial court was not unreasonable, arbitrary, or unconscionable when it determined that Skaggs owed eight weeks of childcare expenses at $200 per week. The trial court did not abuse its discretion in awarding Clifford $1,600 in childcare expenses.

{¶20} We overrule Skaggs's first assignment of error.

---

[3] There was no motion to strike Clifford's affidavit from the record.

B.  Spousal Support

**{¶21}**  In his second assignment of error Skaggs contends that the trial court's

spousal support award in the sum of $600 per month for one year was an abuse of

discretion and against the manifest weight of the evidence. Again, we review spousal

support matters under an abuse of discretion standard. *Boggs v. Boggs,* 4th Dist.

Lawrence No. 14CA20, 2015-Ohio-2634, ¶ 21 citing *Breedlove v. Breedlove,* 4th Dist.

Washington No. 08CA10, 2008-Ohio-4887, ¶9.

**{¶22}**  When a party requests it, the court may make an appropriate and

reasonable spousal support award. R.C. 3105.18(B). In determining whether spousal

support is "appropriate and reasonable," the court must consider the following factors:

  (a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 of the Revised Code;

  (b) The relative earning abilities of the parties;

  (c) The ages and the physical, mental, and emotional conditions of the parties;

  (d) The retirement benefits of the parties;

  (e) The duration of the marriage;

  (f)  The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;

  (g) The standard of living of the parties established during the marriage;

  (h) The relative extent of education of the parties;

  (i)  The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;

(j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;

(k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;

(l) The tax consequences, for each party, of an award of spousal support;

(m) The lost income production capacity of either party that resulted from that party's marital responsibilities;

(n) Any other factor that the court expressly finds to be relevant and equitable.

R.C. 3105.18(C)(1).

**{¶23}** When making a spousal support award, a trial court must consider all statutory factors, rather than basing its determination upon any one of those factors taken in isolation. *Kaechele v. Kaechele*, 35 Ohio St.3d 93, 518 N.E.2d 1197 (1988), paragraph one of the syllabus. Although the trial court has broad discretion to determine the appropriateness and reasonableness of an award of spousal support, it must consider the statutory factors enumerated above and must indicate the basis for a spousal support award in sufficient detail to enable a reviewing court to determine that the award complies with the law. *Id.* at paragraph two of the syllabus. *Kaechele* does not require the trial court to articulate the rationale or basis of its spousal support decision in the decree as long as the record contains adequate support and detail to permit an appellate court to establish whether the award is fair and in accordance with the law. *Carman v. Carman*, 109 Ohio App.3d 698, 704, 672 N.E.2d 1093 (12th Dist. 1996). *Kaechele* and R.C. 3105.18(C), only require the trial court to reveal the basis for

its award in either its judgment entry or the record. *Brown v. Brown*, 4th Dist. Pike No.

02AP689, 2003-Ohio-304, ¶ 10, citing *Carman, supra*. Likewise, the trial court is not

required to comment on each statutory factor; rather, the record need only show the

court considered them in making its award. *McClung v. McClung*, 10th Dist. Franklin No.

03AP-156, 2004-Ohio-240, ¶ 21, citing *Carman* at 703.

{¶24} Here the trial court expressly considered the statutory factors listed in R.C.

3105.18(C)(1) in its decision:

> Both parties are employed outside the home. Defendant earns at least 3-4 times as much as plaintiff.
>
> Because of the nature of his employment, defendant has a greater earning ability than does plaintiff.
>
> The parties are about the same age and are in good physical, mental and emotional condition.
>
> Plaintiff has a B.A. and defendant has an M.B.A.
>
> The parties have agreed upon the division of the retirement benefits.
>
> R.C. 3105.18(C)(1)(m) is not applicable [lost income production capacity].
>
> The parties were married on June 7, 2008, and separated on September 1, 2014. They lived together 6 years and have not lived together since their separation.
>
> The parties have a high standard of living. The marital home is large and has a swimming pool. They bought expensive personal property and took nice vacations.
>
> The parties agreed upon the division of property and the payment of debts.
>
> The parties were responsible for the payment of their own college degrees.
>
> If defendant paid spousal support, his tax liability would decrease and plaintiff's [tax liability] would increase.

Plaintiff did not have to pay rent, auto insurance and day care expenses during most of the separation.

The Court finds that spousal support is warranted because of the following factors:

(1) With the addition of his yearly bonus, defendant will continue to earn 3-4 times more than plaintiff.
(2) Because of the nature of his employment, defendant will continue to earn 3-4 times as much as plaintiff each year.
(3) During the time the parties lived together, they enjoyed a high standard of living.

However, the Court finds that the marriage was of a short duration and the defendant paid plaintiff's expenses enumerated in the previous paragraph for two years, more or less.

Accordingly, the Court shall order defendant to pay spousal support in the sum of $600 per month for 12 months and shall retain jurisdiction of this issue.

**{¶25}** Skaggs contends that the trial court's findings are insufficient to support the spousal support award of $600 for one year. He argues that the trial court confused their respective education and that it is Clifford who has the M.B.A and he the B.A. He also argues that he had to borrow against his 401(K) to live and that he paid more than $40,000 towards Clifford's living expenses during the two years they were separated.

**{¶26}** However, our review of the record shows that the trial court specifically listed and commented on the relevant statutory factors and its decision and entry sufficiently revealed the basis for its award. *See Kaechele*, 35 Ohio St.3d at paragraph two of the syllabus. A review of the trial court's decision and judgment entry shows that the trial court considered the income of the parties, the ages and the physical, mental, and emotional conditions of the parties; the retirement benefits of the parties; the duration of the marriage; the tax consequences; the parties' high standard of living; the contribution or lack thereof of each party to the other's education; the relative assets

and liabilities of the parties, and the fact that Skaggs paid Clifford's rent, auto insurance and day care expenses during most of the two-year separation. See R.C. 3105.18(a)(b)(c)(d)(e)(g)(h)(i)(j)(l) and (n). Although the record shows that the trial court mistakenly attributed the M.B.A. to Skaggs, we find this error had minimal significance to the trial court's ultimate determination. It was Skaggs's three to four times higher earnings, the parties' high living standard, the relatively short duration of the marriage, and Skaggs's payment for Clifford's living expenses during the separation that the court identified as the most important factors in awarding the amount and duration of spousal support.[4] Thus, we reject Skaggs's contention that the trial court abused its discretion in failing to detail the facts relied upon in determining spousal support.

**{¶27}** Moreover, we reject Skaggs's contention that the trial court should have considered that Clifford was "under-employed." R.C. 3119.01(C)(11)(a) authorizes a court to impute income to a parent whom the court finds is voluntarily underemployed, for purposes of calculating child support. R.C. 3105.18, however, contains no like provision applicable to spousal support. Nonetheless, some courts have held that, upon the same finding, income may be imputed to either spouse in determining whether spousal support is reasonable and appropriate. *See Williams-Booker v. Booker,* 2nd Dist. Montgomery Nos. 21752, 21767, 2007-Ohio-4717. " * * *[W]hether a parent is voluntarily (i.e. intentionally) unemployed or voluntarily underemployed is a question of fact for the trial court. Absent an abuse of discretion that factual determination will not be disturbed on appeal." *Rock v. Cabral*, 67 Ohio St.3d 108, 112, 616 N.E.2d 218 (1993).

---

[4] Clifford's 2014 W-2 had wages of $45,637.60 while Skaggs's wages for the same year were $173,681.97.

{¶28} The only evidence of Clifford's alleged underemployment was Clifford's response on cross-examination that it was "arguable" that she was underemployed and that she "probably" had an earning ability higher than her current salary. Based on the record before us, we cannot conclude that the trial court abused its discretion concerning any lack of factual findings on Clifford's purported underemployment.

{¶29} Other than the error attributing the M.B.A. to him, Skaggs cites to no other error by the trial court in its factual findings supporting spousal support.[5] Skaggs does not contest the trial court's other factual findings. The evidence presented at trial in the form of tax and wage records along with the parties' testimony supports the trial court's determination of the high standard of living and that Skaggs earned 3 to 4 times Clifford's salary and will likely continue to do so.

{¶30} The findings made by the trial court are supported by competent, credible evidence in the trial exhibits and transcripts. The trial court did not abuse its discretion in making the spousal support award in the sum of $600 per month for 12 months.

{¶31} We overrule Skaggs's second assignment of error.

### C. Child Support Award Where Joint Income Exceeds $150,000

{¶32} Skaggs contends that the trial court failed to follow the mandatory provisions of R.C. 3119.04 where the parties' combined annual income exceeds $150,000. He concedes that the trial court used the correct figures for the parties' income in its worksheet, but contends that the court failed to calculate the correct monthly support figure because it should have limited income to $150,000. He contends

---

[5] Clifford repeatedly contends that Skaggs's appellate brief does not conform with App.R. 16(A)(3) because in the assignments of error, he does not reference the place in the record where each error is reflected. However, Skaggs includes references to the record in the body of his brief sufficient to allow us to review the assignments of error accordingly.

that the amount of monthly child support where the income is equal to $150,000 totals

$921.38. Skaggs is essentially arguing that the calculation must be capped at $150,000

unless the court determines a higher amount is warranted on a "case by case basis"

and "consider the needs and standard of living of the child." He contends the trial court

did neither. We review child support matters under an abuse of discretion standard.

*Booth v. Booth*, 44 Ohio St.3d 142, 144, 541 N.E.2d 1028 (1989).

{¶33} R.C. 3119.04(B) governs the determination of an obligor's child support

obligation where the combined gross income of both parents exceeds $150,000:

> (B) If the combined gross income of both parents is greater than one
> hundred fifty thousand dollars per year, the court, with respect to a court
> child support order, or the child support enforcement agency, with respect
> to an administrative child support order, shall determine the amount of the
> obligor's child support obligation on a case-by-case basis and shall
> consider the needs and the standard of living of the children who are the
> subject of the child support order and of the parents. The court or agency
> shall compute a basic combined child support obligation that is no less
> than the obligation that would have been computed under the basic child
> support schedule and applicable worksheet for a combined gross income
> of one hundred fifty thousand dollars, unless the court or agency
> determines that it would be unjust or inappropriate and would not be in the
> best interest of the child, obligor, or obligee to order that amount. If the
> court or agency makes such a determination, it shall enter in the journal
> the figure, determination, and findings.

{¶34} For parties with combined incomes exceeding $150,000.00, as is the case

here, the trial court must determine the amount of child support to be paid on a case-by-

case basis, taking into consideration the needs and standard of living of the children. "A

plain reading of the statute reveals that the only time a trial court is required to make

special findings is when it sets support in an amount *less* than the obligation that would

have been computed under the basic child support schedule and applicable worksheet

for a combined gross income of $150,000.00." (Emphasis added.) *Cummin v. Cummin*,

2015-Ohio-5482, 55 N.E.3d 467, ¶ 13 (4th Dist.). In that situation a trial court must find that an award based upon a higher income amount would be unjust, inappropriate or not in the best interests of the child.

{¶35} Here the trial court used the actual income of the parties, which was $224,006.70, to compute Skaggs's monthly child support obligation. The trial court awarded $1,300.14 plus a 2% processing fee, for a total monthly award of $1326.14. Because the amount was not less than the obligation that would have been computed using a combined income of $150,000, the trial court was not required to make special findings. *Id.; Brown v. Brown*, 2014-Ohio-2402, 14 N.E.3d 404, ¶ 55 (8th Dist.) ("when the parents' income exceeds $150,000, R.C. 3119.04(B) leaves the determination entirely to the court's discretion"). "[B]oth statutory and case law indicate that it is within the trial court's discretion to either cap the income at $150,000 or use parties' actual income when crafting a support order." *Cummin* at ¶ 9.

{¶36} Skaggs argues that there is no competent, credible evidence in the record to support the trial court's award based on the parties' standard of living or the child's needs. However, as we found in reviewing the spousal support award, the record contained evidence of the parties' high standard of living. Additionally, both parents, the childcare provider, and the guardian ad litem testified concerning the child's activities and school needs, physical condition, and medical conditions. Skaggs cites nothing in the record that supports his claim that the trial court should have capped income at $150,000 or that the trial court otherwise acted unreasonable, arbitrary, or unconscionable in calculating its child support award.

{¶37} We overrule Skaggs's third assignment of error.

### D. Shared Parenting Plan

**{¶38}** In his fourth assignment of error Skaggs contends that the trial court erred when it adopted a shared parenting plan that was not proposed by either party, was not in accordance with R.C. 3109.04, and therefore was not supported by the manifest weight of the evidence. Skaggs contends that the trial court created its own shared parenting plan, which he argues is not permissible under the shared parenting provisions of R.C. 3109.04. He also contends that the court failed to set forth findings of fact and conclusions of law as required in R.C. 3109.04(D)(1)(a)(ii). Clifford contends that the trial court properly followed the shared parenting provisions, specifically R.C. 3109.04(D)(1)(a)(ii), which allows parties to submit changes to a plan to meet the trial court's objections and allows the trial court to adopt the plan with the changes.

**{¶39}** Although we review the amount of custody awarded using the abuse of discretion standard, we give Skaggs's assertion that the trial court failed to follow statutory requirements de novo review. "The resolution of this assertion requires the interpretation of the statute, which presents a question of law, and accordingly, we review the matter de novo." *Hayslip v. Hanshaw,* 2016-Ohio-3339, 54 N.E.3d 1272, ¶ 12 (4th Dist.) citing *State v. Vanzandt*, 142 Ohio St.3d 223, 2015-Ohio-236, 28 N.E.3d 1267, ¶ 6; *State v. Seal*, 2014-Ohio-4167, 20 N.E.3d 292, ¶ 19 (4th Dist.), quoting *State v. Bundy*, 2012-Ohio-3934, 974 N.E.2d 139, ¶ 46 (4th Dist.) (" 'The interpretation of a statute is a question of law that we review de novo' ").

**{¶40}** R.C. 3109.04(G) allows either or both parents to file a motion for shared parental rights and responsibilities. Skaggs and Clifford each submitted different shared parenting plans and agreed that shared parenting was in the child's best interest. The

primary differences in the two plans were (1) Clifford wanted the child to continue in Green Elementary and Skaggs wanted the child transferred to Rio Grande Elementary (both in the Gallipolis City School district) and (2) Skaggs wanted the child with him two days midweek and Clifford did not want any midweek visit.  Both parties wanted a right of first refusal but differed on when it would be triggered. Because each parent filed separate plans, R.C. 3109.04(D)(1)(a)(ii) applies.

{¶41}  R.C. 3109.04(D)(1)(a) provides:

(D)(1)(a) Upon the filing of a pleading or motion by either parent or both parents, in accordance with division (G) of this section, requesting shared parenting and the filing of a shared parenting plan in accordance with that division, the court shall comply with division (D)(1)(a)(i), (ii), or (iii) of this section, whichever is applicable: * * *

(ii) If each parent makes a request in the parent's pleadings or files a motion and each also files a separate plan, the court shall review each plan filed to determine if either is in the best interest of the children. If the court determines that one of the filed plans is in the best interest of the children, the court may approve the plan. *If the court determines that neither filed plan is in the best interest of the children, the court **may** order each parent to submit appropriate changes to the parent's plan or both of the filed plans to meet the court's objections, or **may** select one of the filed plans and order each parent to submit appropriate changes to the selected plan to meet the court's objections. If changes to the plan or plans are submitted to meet the court's objections, and if any of the filed plans with the changes is in the best interest of the children, the court **may** approve the plan with the changes.* If changes to the plan or plans are not submitted to meet the court's objections, or if the parents submit changes to the plan or plans to meet the court's objections but the court determines that none of the filed plans with the submitted changes is in the best interest of the children, the court may reject the portion of the parents' pleadings or deny their motions requesting shared parenting of the children and proceed as if the requests in the pleadings or the motions had not been made. *If the court approves a plan under this division, either as originally filed or with submitted changes*, or if the court rejects the portion of the parents' pleadings or denies their motions requesting shared parenting under this division and proceeds as if the requests in the pleadings or the motions had not been made*, the court **shall** enter in the record of the case findings of fact and conclusions of law as to the reasons for the approval or the rejection or denial.* Division (D)(1)(b) of this

section applies in relation to the approval or disapproval of a plan under this division. (Emphasis added.)

{¶42} After reviewing the shared parenting plans and the evidence at trial, the trial court stated objections to the shared parenting plans in its decision. Specifically, the trial court objected to the midweek visitation schedules proposed by the parties and determined that Skaggs would have one day of midweek visitation. The trial court also found that it would be in the child's best interest to attend Green Elementary because he would be with his mother most of the time and it would minimize the time the child spends in transportation. The trial court objected to both parties' right of first refusal on the grounds that it is a cumbersome procedure and because the evidence showed that grandparents and other responsible adults were available to provide childcare if a parent could not. The trial court ordered Clifford to submit her previously prepared shared parenting plan to the court with modifications that addressed these objections and gave Skaggs seven days to respond.

{¶43} Clifford contends that she followed the court's instruction and submitted a revised shared parenting plan, and that the final divorce decree adopts the revised shared parenting plan she submitted. Although the record does not contain Clifford's revised shared parenting plan, Clifford appears to have served it on Skaggs because the record contains his objections to the proposed shared parenting plan.

{¶44} A comparison of Clifford's original shared parenting plan and the one adopted by the trial court shows that Clifford complied with the trial court's orders. The final shared parenting plan is identical to Clifford's original plan, except where it addresses the trial court's objections concerning midweek visitation (modifying Section 3.1.1), it addresses the trial court's objection to the right of first refusal (deleting the

original Section 3.2 from the plan), it modifies the child support section to reflect the amount awarded in the final decree and deletes references to the child support amount originally requested by Clifford (deleting references to $1,880.86 per month in Section 4), it removes references to the plan being prepared jointly and as a current agreement (Section 8, presumably because the revised plan addressed the trial court's objections), modifies the income tax dependency exemption in accordance with the court's ultimate determination of this issue (Section 11); removes reference to the earlier effective date of August 11, 2016 set out in Clifford's original plan (deletes Section 15). The trial court adopted Clifford's revised shared parenting plan into the final divorce decree.

{¶45} But the trial court only partially complied with R.C. 3109.04(D)(1)(a)(ii). The trial court stated its plan objections in its decision, ordered Clifford to submit changes to her shared parenting plan to meet the court's objections and gave Skaggs an opportunity to respond. Skaggs argues that this process violated the statutory procedure because the court "must" order both parents to submit appropriate changed plans. He contends that the process resulted in the trial court sua sponte creating its own shared parenting plan. We disagree. The procedures that govern changes to the parties' shared parenting plans are discretionary – the court "may" but is not required to have both parties submit changes. *Grein v. Grein,* 11th Dist. Lake No 2009-L-145, 2010-Ohio-2681, ¶ 28 (court's order directing one party to submit changes to their plan, rather than both parties to each plan, did not violate R.C. 3109.04(D)(10(a)(ii) because that portion of the statute uses "may" and is permissive).

{¶46} Although we find that the trial court correctly followed the statutory procedures governing shared parenting plan review, objections and changes, the trial

court approved Clifford's revised shared parenting plan without entering findings of fact and conclusions of law addressing the reasons for the approval. R.C. 3109.04(D)(1)(a)(ii) does not require a detailed analysis, but to substantially comply with the statute the court's reasons for approval or denial must be apparent from the record. *Swain v. Swain*, 4th Dist. Pike No. 04CA726, 2005-Ohio-65, ¶17-18.

**{¶47}** We are unable to discern the reason underlying the court's decision to adopt Clifford's revised shared parenting plan from the divorce decree:

> In consideration of the testimony and evidence produced and admitted, the Court found in its January 13, 2017 Decision on Remaining Issues at Final Hearing, attached hereto and incorporated herein, that the Plaintiff [Clifford] should be designated as the residential parent of the parties' minor child and the Defendant [Skaggs] should receive parenting time pursuant to this Court's standard order, with modifications as detailed in the attached Shared Parenting Plan. The same is hereby incorporated fully herein as the Order of the Court. * * * 2. The Shared Parenting Plan attached hereto is hereby approved and incorporated herein in its entirety with regards to the allocation of parental rights and responsibilities for the parties' minor child, that all of its terms and provisions are made the order of the Court, and that each party is hereby ordered and directed to comply with all the terms and provisions thereof; * * *.

And, although the court's earlier decision was incorporated into the final divorce decree, it contains only the court's criticisms and objections to the parties' plans. The decision has no findings or conclusions as to: (1) whether a shared parenting plan is in the child's best interest; (2) whether the court considered the best interest factors in R.C. 3109.04(F)(1)/(2); and (3) the court's reasons for approving Clifford's revised shared parenting plan:

> SHARED PARENTING
>
> The child shall reside with plaintiff. Defendant shall have parenting time according to the Gallia County Common Pleas Standard Order of Visitation/Parenting Time which shall be modified as follows:

> I. Weekends: Alternate weekends from Friday after school until Monday when school begins.
>
> II. Weekdays: One weekday from end of school to 8[:]00 pm.
>
> The Court finds that it is in the child's best interest that he attend Green Elementary school. He will be living most of the time with his mother. Attending Green will minimize the time that he spends in transportation.
>
> The Court shall not order a right of first refusal because the Court finds the procedure cumbersome. If a party cannot be with the child for parenting time because of work or other valid reason, that party shall have a reasonable party be with the child.
>
> For example, plaintiff has testified that she and plaintiff's parents have a strained relationship. However, she has not presented evidence that the paternal grandparents do not provide good child care. The Court also assumes that plaintiff has responsible persons who can provide child care if she cannot.
>
> Defendant shall provide medical insurance for the child through his employer. The parties shall each pay one half of the child's medical, dental, optical, prescription drug, and hospital expenses not covered by insurance.
>
> * * *
>
> Plaintiff shall submit his [sic] previously proposed decree and shared parenting plan to be consistent with this decision on or before January 30, 2017 * * * Plaintiff does not have to repeat the language of the decision but merely refer to it. * * * Defendant may respond within seven days.

We are unable to determine the court's reasons for approving Clifford's revised shared parenting plan from these findings. In *Swain*, *supra,* we held that language stating, "Upon review of the evidence and the record, the Court finds that it would be in the best interest of the minor children to adopt [appellee]'s Shared Parenting Plan previously filed herein" was a mere conclusory statement and was insufficient to comply with R.C. 3109.04(D)(1)(a)(iii) (containing the same statutory requirement concerning findings and conclusions as subpart (ii) of that section). *Id.* at ¶ 19.  Here, the court did not make even a conclusory statement that the shared parenting plan was in the best interest of

the child and there is nothing in either the decision or the decree that indicates that the court considered the best interest factors in R.C. 3109.04(F)(1)/(2).[6]

**{¶48}**   We sustain Skaggs's fourth assignment of error. Because our resolution of this argument renders Skaggs's argument regarding the manifest weight of the evidence moot, we will not address it. *See* App.R. 12(A)(1)(c).

### V. CONCLUSION

**{¶49}**   The trial court did not abuse its discretion in ordering Skaggs to reimburse Clifford for childcare expenses or in awarding spousal and child support in the amounts it determined appropriate. However, the trial court did not enter R.C. 3109.04(D)(1)(a)(ii) factual findings or conclusions of law, and its reasoning is not apparent from the record. Therefore, we reverse the trial court's judgment and remand so that the court can enter proper factual findings and conclusions of law as to the reasons it approved Clifford's revised shared parenting plan.

JUDGMENT AFFIRMED IN PART,
REVERSED IN PART, AND
CAUSE REMANDED.

---

[6] The decision and divorce decree contain the only portions of the record addressing the shared parenting plan. The trial court did not make oral findings from the bench at the conclusion of trial, nor were there magistrate findings. The revised shared parenting plan adopted by the court states only that the parties find shared parenting to be in the child's best interest; it is silent as to a best interest finding by the court.

# **JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS AFFIRMED IN PART, REVERSED IN PART and that the CAUSE IS REMANDED. Appellant and Appellee shall split the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Gallia County Court of Common Pleas to carry this judgment into execution.

Any stay previously granted by this Court is hereby terminated as of the date of this entry.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

McFarland, J. & Hoover, J.: Concur in Judgment and Opinion.


For the Court


BY: _____
        William H. Harsha, Judge



### **NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**